DUNKLE, Appellant,

v.

DUNKLE, n.k.a. Anderson, Appellee.

[Cite as *Dunkle v. Dunkle* (1999), 135 Ohio App.3d 669.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 99CA01.

Decided Nov. 8, 1999.

670

672

*L. Jackson Henniger*, for appellant.[1]

HARSHA, Judge.

Appellant Isaac Dunkle was ordered to pay child support as part of a divorce judgment. More than two years later, however, genetic tests revealed that he was not the biological father of the child he was ordered to support. The appellant filed a Civ.R. 60(B) motion for relief from judgment, seeking relief from his obligation to pay child support. The trial court denied the motion, and the appellant raises a single assignment of error for our review:

"Did the trial court commit reversible error when it determined that Isaac Dunkle was unable to proceed on a motion for relief from judgment under Civ.R. 60(B)?"

We hold that the trial court erred in failing to properly consider whether the appellant could seek relief under Civ.R. 60(B)(4). Accordingly, we reverse and remand for further proceedings.

I

The appellant and appellee, Diana Sue Dunkle (n.k.a. Diana Anderson), were married in April 1993. The couple divorced in February 1996, less than one year after Diana gave birth to a daughter, Ciara. The divorce judgment ordered the appellant to pay $197.12 per month in child support. For over a year after the divorce, the appellant paid his support obligations and regularly visited Ciara.

Sometime between March and May 1997, the appellant began to question whether he was Ciara's biological father when the child did not resemble him. The appellant discussed his concerns with Anderson, who acknowledged that she had sexual relations with another man in August 1994, the approximate time of Ciara's conception. Prior to this time, neither Anderson nor the appellant claims to have doubted the appellant's paternity. After discussing the matter, Anderson told the appellant that he could terminate visitation and support for Ciara. At that point, the appellant stopped visiting Ciara and stopped paying child support.

In May 1998, the Hocking County Child Support Enforcement Agency ("CSEA") filed a motion for contempt for the appellant's failure to pay child support in accordance with the February 1996 divorce judgment. The appellant responded with a memorandum contra and also filed a motion for relief from judgment under Civ.R. 60(B)(4) seeking prospective relief from his child support obligation. The appellant argued that continued support was inappropriate in

---

1. Although the appellee has not entered an appearance in this appeal, she was represented by counsel in the proceedings below.

light of the revelation that he was not Ciara's biological father, and sought DNA testing to conclusively demonstrate nonpaternity. The trial court allowed the appellant to obtain DNA paternity testing. The test results revealed a zero percent probability that the appellant was Ciara's biological father. After receiving notice of these test results, the CSEA dismissed its contempt motion. The case then proceeded to hearing on the appellant's Civ.R. 60(B) motion.

Following the hearing on the appellant's motion, the trial court issued findings of fact and conclusions of law. Among its factual findings, the court recognized that the DNA test results indicated a zero percent probability that the appellant was Ciara's father. The court also found that the appellant previously believed Ciara to be his daughter, despite his knowledge that Anderson had a sexual relationship with another man at the approximate time of Ciara's conception. The trial court also recognized that the appellant "has no present relationship with Ciara, and stopped exercising visitation and paying support in March of 1997."[2]

In its conclusions of law, the trial court characterized the DNA test results as "newly discovered evidence" under Civ.R. 60(B)(2). Notwithstanding the DNA test's revelation that the appellant was not Ciara's father, the court found the appellant's motion untimely. The court reasoned that a party must file a Civ.R. 60(B)(2) motion based upon newly discovered evidence no later than one year after the judgment from which relief is sought. The court also explained that it was bound to apply Civ.R. 60(B)(2) to this case rather than Civ.R. 60(B)(4), the section under which the appellant sought relief. Applying *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 637 N.E.2d 914, the court determined that it could not treat the appellant's motion as a Civ.R. 60(B)(4) motion when a more specific provision for newly discovered evidence, Civ.R. 60(B)(2), applied to the situation in this case. Even if Civ.R. 60(B)(4) applied, however, the trial court noted that "the period of time which elapsed after the final decree was filed until the [Civ.R.] 60(B) motion was filed was unreasonable." Finding itself "bound to follow the Supreme Court's pronouncements in *Strack*," the trial court overruled the appellant's motion for relief from judgment. The appellant commenced this appeal.

## II

More than two years after the initial paternity and child support adjudication, the appellant sought relief from his obligations by way of Civ.R. 60(B) motion. The rule states:

---

**2.** Although the court made this finding of fact, an arrearage calculation prepared by the Hocking County CSEA indicated that the appellant made his final support payment for Ciara in June 1997.

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, *or it is no longer equitable that the judgment should have prospective application;* or (5) any other reason justifying relief from the judgment.'" (Emphasis added.)

A Civ.R. 60(B) motion for relief from judgment is addressed to the sound discretion of the trial court; accordingly, we will not reverse a trial court's ruling on a Civ.R. 60(B) motion absent an abuse of discretion. *Strack v. Pelton, supra,* 70 Ohio St.3d at 174, 637 N.E.2d at 915–916; *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566–567. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court has acted either unreasonably, unconscionably, or arbitrarily. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. A reviewing court will not find an abuse of discretion merely because it could maintain a different opinion if it were deciding the case *de novo. Lewis v. Alfa Laval Separation, Inc.* (1998), 128 Ohio App.3d 200, 207, 714 N.E.2d 426, 430–431.

The discretion exercised by the trial court in considering a Civ.R. 60(B) motion is not unbridled. *Doddridge v. Fitzpatrick* (1978), 53 Ohio St.2d 9, 12, 7 O.O.3d 5, 6–7, 371 N.E.2d 214, 217. The court must consider whether the movant has demonstrated three requisite elements for obtaining Civ.R. 60(B) relief:

"(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus.

The elements entitling a movant to Civ.R. 60(B) relief "are independent and in the conjunctive; thus, the test is not fulfilled if any one of the requirements is not met." *Strack, supra,* 70 Ohio St.3d at 174, 637 N.E.2d at 915.

The appellant offers three arguments in support of his contention that the trial court erroneously overruled his Civ.R. 60(B) motion. First, the appellant argues

that the trial court's decision was "against the manifest weight of the evidence." Second, the appellant urges that the trial court erred by relying on *Strack, supra,* and failing to analyze whether he could invoke Civ.R. 60(B)(4). Finally, the appellant argues that the trial court erred by allowing Anderson's counsel to present testimony from his secretary during the Civ.R. 60(B) motion hearing. We address each of these arguments in turn.

## A.

The appellant's first argument focuses on the apparent reality, learned through DNA testing, that the appellant is not Ciara's biological father. Given this fact, the appellant argues that the trial court's decision to deny Civ.R. 60(B) relief is "against the manifest weight of the evidence." Although we are cognizant of the important scientific revelation that the appellant is not Ciara's biological father, we cannot reverse the trial court's decision on such a ground.

By raising this argument, the appellant apparently asks us to conduct a "manifest weight of the evidence" standard of reviewing the trial court's ruling on a Civ.R. 60(B) motion. As noted previously, however, the decision to grant or deny Civ.R. 60(B) relief is left to the sound discretion of the trial court. See, *e.g., Strack,* 70 Ohio St.3d at 174, 637 N.E.2d at 915–916. Accordingly, our review is limited to ascertaining whether the trial court abused its discretion. Arguments concerning the "manifest weight of the evidence" are neither a proper ground for Civ.R. 60(B) relief nor a proper standard for reviewing a trial court's Civ.R. 60(B) ruling. See *McIntyre v. Braydich* (Dec. 5, 1997), Trumbull App. No. 96–T–5602, unreported, 1997 WL 772936; *MacKenzie v. MacKenzie* (June 9, 1994), Cuyahoga App. No. 64823, unreported, 1994 WL 258659; *Geyer v. Geyer* (Jan. 13, 1986), Madison App. No. CA85–08–027, unreported, 1986 WL 725. We therefore decline the appellant's invitation to engage in a "manifest weight of the evidence" analysis.

## B.

The appellant's second argument focuses upon the trial court's reasons for overruling his Civ.R. 60(B) motion. Based on its findings of fact and conclusions of law, the trial court ultimately found that the appellant's motion was based upon "newly discovered evidence" and was therefore untimely under the rule.

There is essentially no issue as to whether the appellant has satisfied the first prong of the *GTE Automatic Elec.* test for Civ.R. 60(B) relief. Throughout this case, the appellant has relied upon the results of DNA testing to argue that he has a "meritorious claim" to present in the event he is afforded Civ.R. 60(B) relief. We agree that the genetic test excluding the appellant as Ciara's father

demonstrates the existence of a meritorious claim under Civ.R. 60(B). See *Gross v. Guenther* (June 1, 1999), Butler App. No. CA98–08–165, unreported, 1999 WL 450210. The ultimate issue in this case deals with the remaining requirements for Civ.R. 60(B) relief, *i.e.* which of the Civ.R. 60(B)(1) through (B)(5) grounds applies and whether the appellant brought his motion within a reasonable time.

The appellant filed his motion under Civ.R. 60(B)(4), alleging that it is no longer equitable for him to be required to pay support for Ciara. The appellant bases this contention largely on the DNA test results, which exclude him from being Ciara's biological father. The trial court, however, decided that the applicable provision for the appellant's motion was Civ.R. 60(B)(2). The trial court relied upon the Ohio Supreme Court's decision in *Strack v. Pelton, supra,* to decide that the DNA test results were "newly discovered evidence" within the meaning of Civ.R. 60(B)(2).

In *Strack,* a divorce judgment ordered Strack to pay child support for a son born during the parties' marriage. Nine years later, Strack filed a motion for genetic testing to conclusively determine his paternity for the child. The type of genetic testing Strack sought was unavailable at the time of his divorce nine years earlier. The results excluded Strack as a possible father of the child. More than two years after the genetic tests, Strack filed a Civ.R. 60(B) motion for relief from certain aspects of the divorce decree relating to paternity and child support. The Ohio Supreme Court affirmed the trial court's denial of Strack's motion. The court disagreed with Strack's argument that his motion fell under Civ.R. 60(B)(4) and (B)(5). The court held that:

"The basis of Strack's motion is test results that were not available at the time of the divorce decree. The results are evidence; they are newly discovered. A straightforward and logical reading of Civ.R. 60(B)(2) dictates that it applies.

"Civ.R. 60(B)(5) applies only when a more specific provision does not apply. *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66, 5 OBR 120, 122, 448 N.E.2d 1365, 1367. Here, Civ.R. 60(B)(2) specifically addresses newly discovered evidence; thus, there is no reason to invoke the less specific catchall provision, Civ.R. 60(B)(5). *The claim under Civ.R. 60(B)(4) fails for similar reasons.* We hold, therefore, that Civ.R. 60(B)(2) is the provision of the rule that applies to Strack's claim." (Emphasis added.)

Thus, the Supreme Court refused to treat Strack's motion as one under Civ.R. 60(B)(4) or (B)(5) when the more specific "newly discovered evidence" provision of Civ.R. 60(B)(2) applied to the genetic testing involved in that case. The trial court in this case applied *Strack* to decide that Civ.R. 60(B)(2), and *not* Civ.R. 60(B)(4), was the proper avenue for the appellant's requested relief. The trial court decided it could not apply Civ.R. 60(B)(4) as an appropriate ground for relief when the specific "newly discovered evidence" ground under Civ.R. 60(B)(2)

applied to the facts of this case. In turn, because Civ.R. 60(B)(2) was the applicable provision, the trial court concluded that the appellant's motion was untimely, as it was filed outside the one-year time limit imposed by the rule.

During the pendency of this appeal, however, the Ohio Supreme Court decided *Cuyahoga Support Enforcement Agency v. Guthrie* (1999), 84 Ohio St.3d 437, 705 N.E.2d 318, which invalidates the trial court's reasoning. In *Guthrie*, the court held:

"For purposes of Civ.R. 60(B)(2), results of a paternity test, not obtained and thus not provided until after an adjudication of the existence of a parent-and-child relationship, *are not 'newly discovered evidence.'*" (Emphasis added.) *Id.* at syllabus.

*Guthrie* involved a paternity action that resulted in a juvenile court's determination that Guthrie was the father of one Jason Taylor and obligated to pay child support. Guthrie failed to appear at either the paternity trial or·an earlier administrative hearing held by the Cuyahoga CSEA to determine the existence or nonexistence of a parent-child relationship between him and Jason. One year after the juvenile court's judgment, Guthrie requested genetic testing. The test results revealed a zero percent probability that Guthrie was Jason's father. The juvenile court entered judgment in Guthrie's favor and vacated its prior paternity determination. The Eighth District Court of Appeals affirmed the trial court's decision and certified a single question for Ohio Supreme Court review: "When a motion for relief from a judgment of paternity is based on results of genetic testing, can such motion be brought under Civ.R. 60(B)(4), which provides for relief when the continued application of the·judgment would be inequitable or must the motion be reviewed under Civ.R. 60(B)(2), which provides for relief based upon newly discovered evidence?" *Id.* at 439, 705 N.E.2d at 320.

The Supreme Court rejected CSEA's argument that *Strack*'s holding, and therefore Civ.R. 60(B)(2), controlled the outcome in *Guthrie*. The court explained that Civ.R. 60(B)(2) was the operable provision in *Strack* because the Civ.R. 60(B) motion in that case "was the result of genetic testing whose technology was not available at the time of the initial determination of paternity." *Id.* at 442, 705 N.E.2d at 322. Because the testing done in *Strack* was based upon new technology, it was necessarily "newly discovered evidence" within the meaning of Civ.R. 60(B)(2). *Id.* In contrast, the court noted that Guthrie "had genetic testing available to him at the time of the initial finding of parentage." *Id.* Because the technology for paternity testing was in existence at the time of the initial paternity determination, Guthrie's test results did *not* meet the Civ.R. 60(B)(2) definition of newly discovered evidence because the results could have been discovered by due diligence in time to move for a new trial. *Id.* The court went on to consider whether Civ.R. 60(B)(4) applied to the facts of *Guthrie*,

ultimately deciding that Guthrie could not obtain relief under this provision. *Id.* at 443, 705 N.E.2d at 323. The court noted that Civ.R. 60(B)(4) is " 'designed to provide relief to those who have been prospectively subjected to circumstances *which they had no opportunity to foresee or control.*' " *Id.* (emphasis *sic* ), quoting *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 24 OBR 362, 493 N.E.2d 1353, paragraph one of the syllabus. Because Guthrie failed to appear at two separate parentage proceedings, he could not seek refuge under Civ.R. 60(B)(4); he essentially made a "voluntary, deliberate choice not to seek genetic testing until after a finding of parentage and until after he was notified of a support arrearage." *Id.*

■ After *Guthrie*, it is apparent that Civ.R. 60(B)(2) does not control the situation in this case. The appellant sought Civ.R. 60(B) relief based in large part upon DNA test results that were not obtained, and thus not provided, until after the divorce decree establishing his paternity and support obligation for Ciara. *Guthrie*'s lone syllabus paragraph expressly holds that this type of evidence is not "newly discovered" for purposes of Civ.R. 60(B)(2). Because Civ.R. 60(B)(2) is inapplicable, the trial court's application of this provision cannot stand. *Guthrie*'s further analysis of whether relief was warranted under Civ.R. 60(B)(4) also indicates that this provision may be applicable under certain circumstances. See *Gross v. Guenther, supra* (post-*Guthrie* case recognizing applicability of Civ.R. 60(B)(4) to a movant's discovery of nonpaternity); see, also, *Leguillon v. Leguillon* (1998), 124 Ohio App.3d 757, 768, 707 N.E.2d 571, 578–579 (noting that *Strack* did not preclude application of Civ.R. 60(B)(4) in every case). The trial court therefore erred to the extent it relied upon Civ.R. 60(B)(2) rather than Civ.R. 60(B)(4) in denying the appellant's motion.

Although it denied the appellant's motion for relief from judgment based on its incorrect determination that Civ.R. 60(B)(2) was controlling, the trial court appeared to posit an alternative rationale. In a one-sentence conclusion of law, the court determined that "[e]ven if the catch-all provisions [of Civ.R. 60(B)(4) and (B)(5) ] applied, the period of time which elapsed after the final decree was filed until the [Civ.R.] 60(B) motion was filed was unreasonable." [3] Thus, the court decided that the appellant could not, in any event, rely upon Civ.R. 60(B)(4) because he did not move for relief under this provision within a reasonable time. See Civ.R. 60(B). We disagree with this alternative determination by the trial court.

■ As previously noted, we will not disturb a trial court's decision on a Civ.R. 60(B) motion absent an abuse of discretion. When applying an abuse of discretion standard, we are mindful that a reviewing court is not free to

---

**3.** Although the trial court purported to deny relief under Civ. R. 60(B)(5), we note that the appellant's motion did not seek relief under this "catchall" provision.

substitute its own judgment for that of the trial court. *In re Jane Doe* (1991), 57 Ohio St.3d 135, 137–38, 566 N.E.2d 1181, 1183–1185, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309. Rather, we must ascertain whether the trial court's action was unreasonable, arbitrary, or unconscionable. *Huffman, supra,* 19 Ohio St.3d at 87, 482 N.E.2d at 1251–1252; *State v. Adams* (1980), 62 Ohio St.2d 151, 157–58, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149. Because most instances of abuse of discretion result in decisions that are "unreasonable" rather than "unconscionable" or "arbitrary," our abuse of discretion analysis generally calls for us to test the court's reasonableness in arriving at its decision. See *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 600–601. A court's decision is unreasonable—and therefore an abuse of discretion—"if there is no sound reasoning process that would support that decision." *Id.*; see, also, *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599–600 (in analyzing whether trial court abused its discretion, reviewing court should measure trial court's "adherence to the test"). Thus, our task in this case is to determine whether there is a sound reasoning process that supports the trial court's decision that the appellant did not bring his Civ.R. 60(B)(4) motion "within a reasonable time." We hold that there is not.

■ Although the trial court set forth four full paragraphs of conclusions of law, it devoted only one sentence to Civ.R. 60(B)(4)'s applicability. The only conclusion the court reached was that the "period of time which elapsed" between the divorce decree and the appellant's Civ.R. 60(B) motion was unreasonable. Thus, it appears that the mere passage of time was the only factor the court relied upon in its "reasonable time" determination. The court's decision therefore concludes that the two years and four months that elapsed were *per se* unreasonable. However, for purposes of a Civ.R. 60(B)(4) motion raising the issue of nonpaternity, the time elapsed between the paternity adjudication and the Civ.R. 60(B) motion is not the only relevant factor for a court to consider in deciding whether the motion is timely. See *Taylor v. Haven* (1993), 91 Ohio App.3d 846, 852, 633 N.E.2d 1197, 1200 (holding that "trial court should consider factors beyond the absolute length of time before the movant files a Civ.R. 60(B) motion").

■ Whether a Civ.R. 60(B)(4) motion is timely depends in part on the nature of the relationship between the obligor and the child. *Leguillon, supra,* 124 Ohio App.3d at 768, 707 N.E.2d at 578–579. When there has never been a meaningful relationship between the child and the adjudicated father, a two-year period between the initial parentage adjudication and the Civ.R. 60(B) motion may not be *per se* unreasonable. *Id.* On the other hand, the reasonable time period may have elapsed where the child and the adjudicated "father" have established a relationship. *Id.*; see, also, *Strack, supra,* 70 Ohio St.3d at 176, 637

N.E.2d at 916 (Pfeifer, J., dissenting) (if child has come to rely upon the wrongly identified "father" for emotional and financial support, the reasonable time period for filing Civ.R. 60(B)(4) motion has expired); *Stevens v. Stevens* (Aug. 1, 1990), Montgomery App. Nos. 11958, 12060, unreported, 1990 WL 116157 (Fain, J., concurring) (expressing view that the best interests of the child should affect a trial court's determination of whether Civ.R. 60(B) motion was filed within reasonable time). The likely future of any such relationship and/or the chance that the child may establish a relationship with her biological father are also relevant factors. *Leguillon,* 124 Ohio App.3d at 768, 707 N.E.2d at 579, fn. 8.

Additionally, if the adjudicated father unreasonably failed to seek relief earlier, a court may properly decide that the reasonable time period for Civ.R. 60(B)(4) relief has expired. *Id.*; see, also, *Gross v. Guenther, supra.* In essence, the "reasonable time" issue involves a determination of the child's interests "along with any action or inaction [by the adjudicated father] that could raise an issue of estoppel." *Leguillon,* 124 Ohio App.3d at 768, 707 N.E.2d at 579.

The adjudicated father's action or inaction may also be relevant to a trial court's determination of whether Civ.R. 60(B)(4) is even applicable. As *Guthrie* admonishes, Civ.R. 60(B)(4) is *not* designed to provide relief from a prior adjudication that the party seeking relief could have reasonably prevented. *Guthrie, supra,* 84 Ohio St.3d at 443, 705 N.E.2d at 323. Thus, if an adjudicated father failed to seek genetic testing despite knowledge of the reasonable likelihood he was *not* the biological father, he makes a "voluntary, deliberate choice" that Civ.R. 60(B)(4) cannot undo. See *id.*; see, also, *Knapp, supra,* 24 Ohio St.3d 141, 24 OBR 362, 493 N.E.2d 1353 at paragraph two of the syllabus. In this case, neither party has contended that the appellant knew of his nonpaternity at the time of the divorce. On this record, there is no basis to conclude that the appellant has made a "voluntary and deliberate" choice that would render Civ.R. 60(B)(4) inapplicable as a matter of law.

In this case, the trial court does not appear to have considered the totality of relevant factors in its determination that the appellant was not entitled to Civ.R. 60(B)(4) relief. The record is not entirely clear on a number of relevant factors, including when the appellant first suspected he was not Ciara's biological father and what the nature of the relationship is between the appellant and Ciara. Accordingly, we sustain the appellant's assignment of error and remand to the trial court for a determination of whether the appellant may seek relief under Civ.R. 60(B)(4).

## C.

In his third argument, the appellant takes issue with the trial court allowing the secretary of Anderson's attorney to testify at the Civ.R. 60(B) hearing. The

secretary testified that Anderson came to her office for an attorney consultation in May 1996, apparently to bolster the argument that Anderson, and presumably the appellant, knew of the appellant's nonpaternity as early as that time. The appellant asserts that such testimony violated the Code of Professional Responsibility by placing opposing counsel "in the position of a witness." The appellant argues that he "would have had to refute this testimony by calling [opposing counsel] to the stand * * *." This argument is without merit.

 We first note that the appellant failed to object to the opposing counsel's secretary testifying at the hearing. Thus, the appellant waived any error concerning the competency or admissibility of her testimony. Even if the appellant had objected, we discern no error. The appellant correctly notes that a lawyer generally may not represent a client if he or another "*lawyer* in his firm *ought to be called* as a witness." DR 5–101(B), Code of Professional Responsibility; see, also, DR 5–102(A) (lawyer should withdraw as counsel upon learning that he or another lawyer in his firm ought to be called as a witness on behalf of his client). However, the rules do *not* forbid a lawyer from calling a nonlawyer employee as a witness. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 435, 588 N.E.2d 819, 828–829. Further, the appellant's argument that the secretary's testimony forced him to call opposing counsel as a witness to challenge his credibility is dubious. Cross-examination of the secretary alone could expose any bias. *Id.*[4]

### III

In sum, we sustain the appellant's assignment of error. We hold that the trial court erred in analyzing the appellant's motion under Civ.R. 60(B)(2). Based on the Supreme Court's holding in *Guthrie,* the appellant's DNA test results are not "newly discovered" evidence within the meaning of the rule. Finally, we also hold that the trial court erred in denying the appellant Civ.R. 60(B)(4) relief, insofar as the trial court did not take into account all of the relevant factors in determining whether the appellant brought his motion within a "reasonable time." Accordingly, we reverse the judgment of the trial court and remand for a further determination of whether the appellant is entitled to relief under Civ.R. 60(B)(4).

*Judgment reversed*
*and cause remanded.*

KLINE, P.J., and PETER B. ABELE, J., concur.

---

4. The appellant neither cross-examined the secretary nor attempted to call the opposing counsel to the stand.