CUYAHOGA SUPPORT ENFORCEMENT AGENCY,
APPELLANT, *v.* GUTHRIE, APPELLEE.

[Cite as *Cuyahoga Support Enforcement Agency
v. Guthrie* (1999), 84 Ohio St.3d 437.]

(No. 97–2398—Submitted October 13, 1998—Decided February 17, 1999.)

*William Mason,* Cuyahoga County Prosecuting Attorney, *Lynne A. Yohe, Timothy G. Spackman* and *Michael J. Corrigan,* Assistant Prosecuting Attorneys, for appellant.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *David J. Kelley,* Assistant Prosecuting Attorney, urging reversal for *amicus curiae,* Hamilton County Prosecuting Attorney's Office.

---

DOUGLAS, J. The question certified to us by the Eighth District Court of Appeals is, "When a motion for relief from a judgment of paternity is based on the results of genetic testing, can such motion be brought under Civ.R. 60(B)(4), which provides for relief when the continued application of the judgment would be inequitable or must the motion be reviewed under Civ.R. 60(B)(2), which provides for relief based upon newly discovered evidence?" The court of appeals concluded that the February 5, 1997 entry of the juvenile court, vacating the initial determination of parentage and interim order of support, was authorized under Civ.R. 60(B)(4). CSEA contends that the court of appeals erred in this regard and that relief from a prior determination of parentage premised upon later genetic testing can be authorized pursuant to Civ.R. 60(B)(2), but not (B)(4).

We disagree both with the conclusion reached by the court of appeals regarding the application of Civ.R. 60(B)(4) and with CSEA's position that the applicable provision is Civ.R. 60(B)(2). In fact, upon further reflection, and notwithstanding the question certified for our review, we find that neither Civ.R. 60(B)(2) nor (4) controls the outcome of this particular case. To find that the juvenile court had the authority to vacate the prior determination of paternity under either (B)(2) or (4), given the circumstances of this case, would clearly be contrary to law.

Civ.R. 60(B) provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) *newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);* (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, *or it is no longer equitable that the judgment should have prospective application;* or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, *and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.* A

motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules." (Emphasis added.)

In order to prevail on a motion brought pursuant to Civ.R. 60(B), the moving party must demonstrate that "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus. We have considered these standards in the context of a challenge to a prior finding of paternity and order of child support. See *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 637 N.E.2d 914.

In *Strack,* approximately nine years after a divorce decree addressing paternity and child support, David A. Strack filed a motion for a human leukocyte antigen ("HLA") test to determine whether he was the father of the child in question. Prior blood-grouping tests had indicated that Strack could not be excluded as the father. However, the results of the later available HLA tests conclusively excluded Strack as the biological father. Strack then filed a Civ.R. 60(B) motion, challenging the divorce decree as it pertained to paternity and child support. The trial court overruled the motion, and the court of appeals affirmed. On appeal to this court, Strack argued that he was entitled to relief under Civ.R. 60(B)(4) and (5). We disagreed and held:

"Appellant asserts that his claim falls under Civ.R. 60(B)(4) and (5), and not the more specific provision that deals with newly discovered evidence. We disagree. *The basis of Strack's motion is test results that were not available at the time of the divorce decree. The results are evidence; they are newly discovered. A straightforward and logical reading of Civ.R. 60(B)(2) dictates that it applies.*

"Civ.R. 60(B)(5) applies only when a more specific provision does not apply. *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66, 5 OBR 120, 122, 448 N.E.2d 1365, 1367. Here, Civ.R. 60(B)(2) specifically addresses newly discovered evidence; thus, there is no reason to invoke the less specific catchall provision, Civ.R. 60(B)(5). The claim under Civ.R. 60(B)(4) fails for similar reasons. We hold, therefore, that Civ.R. 60(B)(2) is the provision of the rule that applies to Strack's claim.

"The third prong of the Civ.R. 60(B) test is that the motion must be made within a reasonable time, and where the grounds for relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after judgment. See *GTE, supra.* Strack filed his

Civ.R. 60(B) motion in 1987, approximately nine years after the judgment of divorce and five years after the results of genetic testing became admissible in this state. R.C. 3111.09 and 3111.10. This filing delay falls far outside the one-year time limitation imposed by Civ.R. 60(B)(2). The fact that Strack filed his motion shortly after he received the results of the genetic testing is not legally relevant. The time limits of Civ.R. 60(B) refer to the judgment from which relief is sought, not to the time of discovery of the new evidence. Strack bears some responsibility to assert timely his new evidence. The law cannot assume lack of knowledge of the admissibility of HLA test results. We decline the invitation to alter the clear meaning of Civ.R. 60(B).

"Even if we were to apply Civ.R. 60(B) loosely and allow extra time not provided for by the rule, we would have to look to the time when the evidence became admissible to determine paternity, in this case 1982. Because Strack asserts that he has contested paternity of the minor child from before the time of the divorce decree, we may impute to him the knowledge of the newly developed technology to support his claim. For these reasons, we concur with the trial court's determination that Strack did not file his Civ.R. 60(B) motion in a timely manner." (Emphasis added.) *Strack*, 70 Ohio St.3d at 174–175, 637 N.E.2d at 916.

In reaching this conclusion, we recognized the competing principles of finality and perfection, and stated:

"We are not unaware that our decision in effect declares as static a state of facts that reliable scientific evidence contradicts. Nonetheless, there are compelling reasons that support such a decision. A claim under Civ.R. 60(B) requires the court to carefully consider the two conflicting principles of finality and perfection. In *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 144–145, 24 OBR 362, 364, 493 N.E.2d 1353, 1356, this court declared, '[f]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values.' Finality is particularly compelling in a case involving determinations of parentage, visitation and support of a minor child." *Strack*, 70 Ohio St.3d at 175, 637 N.E.2d at 916.

CSEA contends that *Strack* is dispositive of the question before us. CSEA asserts that testing results submitted after an initial finding of paternity are by necessity "newly discovered evidence" for purposes of Civ.R. 60(B)(2). Therefore, according to CSEA, because appellee requested genetic testing more than one year after the initial determination of paternity, the request was not made in a timely manner.

However, we believe that CSEA misreads *Strack* and our findings in that case with respect to the applicability of Civ.R. 60(B)(2). The situation in *Strack* is clearly distinguishable and can, in fact, be reconciled with the fact pattern now before us. In *Strack* we did not state nor did we intend to establish an absolute rule that Civ.R. 60(B)(2) was to have universal application in every situation where later tests are submitted to challenge a previous determination of paternity. Indeed, to apply *Strack* in such a literal manner would leave little room for a court to consider all the interests involved in these types of cases, including the welfare of the minor child, and to balance all of the equities. To be sure, an application of *Strack,* as suggested by CSEA, to the situation here would be clearly inappropriate.

In *Strack,* we found that Civ.R. 60(B)(2) was the operable provision, since the basis of Strack's 60(B) motion was the result of genetic testing whose technology was not available at the time of the initial determination of paternity. Thus, the later HLA test results obviously fell under (B)(2), newly discovered evidence. In contrast, appellee herein had genetic testing available to him at the time of the initial finding of parentage. In fact, such testing was available at the time of the administrative hearing before the CSEA. In this regard, we agree with the court of appeals that Civ.R. 60(B)(2) is not applicable here because "the technology for paternity testing was in existence at the time of the initial paternity determination. Consequently, it does not meet the definition of newly discovered evidence because it could have been discovered by due diligence in time to move for a new trial."

Moreover, a noteworthy distinction in *Strack* also exists in that Strack, in his case, actually filed a Civ.R. 60(B) motion. Here, appellee did not file a Civ.R. 60(B) motion in the juvenile court. Thus, the court did not make a Civ.R. 60(B) ruling. Further, the juvenile court, in its March 23, 1995 order, approved and adopted the recommendation of the magistrate, which included the recommendation that the matter should be continued for further disposition. Appellee was then advised by CSEA that he could contest the support arrearage. He thereafter appeared at a scheduled hearing and requested genetic testing, and his request was not challenged by CSEA.

Therefore, for the foregoing reasons, we reject CSEA's assertion that Civ.R. 60(B)(2) is applicable in this case. We hold that for purposes of Civ.R. 60(B)(2), results of a paternity test, not obtained and thus not provided until after an adjudication of the existence of a parent-and-child relationship, are not "newly discovered evidence."

Furthermore, while we agree with the court of appeals' reasoning that Civ.R. 60(B)(2) does not control the outcome of this particular case, we are, however, also not persuaded by the court's conclusion that the juvenile court's February 5,

1997 final ruling was authorized under Civ.R. 60(B)(4). In *Knapp,* 24 Ohio St.3d 141, 24 OBR 362, 493 N.E.2d 1353, paragraph one of the syllabus, we held that "[t]he ' * * * it is no longer equitable * * *' clause of Civ.R. 60(B)(4) was designed to provide relief to those who have been prospectively subjected to circumstances *which they had no opportunity to foresee or control."* (Emphasis added.) In other words, Civ.R. 60(B)(4) was not meant to offer a party a means to negate a prior finding that the party could have reasonably prevented.

In the case at bar, appellee did not appear at the February 17, 1995 trial, and he was found to be Jason's father. The record reflects that he was aware of parentage proceedings against him and that he was also aware that genetic testing could have been performed. Appellee, however, chose to ignore these initial proceedings. In doing so, he made a voluntary, deliberate choice not to seek genetic testing until after a finding of parentage and until after he was notified of a support arrearage. Clearly, Civ.R. 60(B)(4) was not intended to provide a party relief in such an instance. See *Knapp,* 24 Ohio St.3d at 145–146, 24 OBR at 365, 493 N.E.2d at 1357 (Otherwise, "litigants, armed with the knowledge that Civ.R. 60[B][4] would relieve them of the consequences of their voluntary, deliberate choices, would be encouraged to litigate carelessly. Judgment winners would be unable to rely on their victories. Those financially able to do so could crush their less affluent adversaries under a pile of Civ.R. 60[B][4] motions. All this would be a subversion of judicial economy and an opening of the proverbial floodgates, causing Ohio's courts to drown in a sea of duplicative, never-ending litigation."). Therefore, we find that Civ.R. 60(B)(4) is not applicable here.

Having concluded that neither Civ.R. 60(B)(2) nor (4) is applicable under the circumstances of this case, the question then becomes what authority, if any, did the juvenile court have in vacating the prior determination of parentage and in ordering interim child support. We believe that the juvenile court had the authority to vacate the initial finding of paternity under R.C. 3111.16. See, generally, *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 588 N.E.2d 806.

Specifically, R.C. 3111.16 provides:

*"The court has continuing jurisdiction to modify or revoke a judgment or order issued under sections 3111.01 to 3111.19 of the Revised Code to provide for future education and support and a judgment or order issued with respect to matters listed in divisions (C) and (D) of section 3111.13 and division (B) of section 3111.15 of the Revised Code,* except that a court entering a judgment or order for the payment of a lump sum or the purchase of an annuity under division (D) of section 3111.13 of the Revised Code may specify that the judgment or order may not be modified or revoked." (Emphasis added.)

Pursuant to R.C. 3111.16, a juvenile court has continuing jurisdiction over all judgments or orders issued in accordance with R.C. 3111.01 to 3111.19, which includes judgments or orders that concern the duty of support or involve the welfare of a minor child. See *Dickinson*, 63 Ohio St.3d at 413–411, 588 N.E.2d at 811 ("A child affected by such an order is considered a ward of the court, which may always reconsider and modify its rulings when changed circumstances require it during the child's minority."). Here, the juvenile court exercised its continuing jurisdiction upon a finding that there was a zero percent chance that appellee was Jason's biological father. In vacating the initial finding of parentage, the court was obviously aware of and considered all interests involved, including the best interests of the minor child. In this regard, we are not prepared to say that the court erred in vacating the prior finding of paternity. We believe that, given the circumstances here, the subsequent finding of nonpaternity constituted a change in circumstances that warranted relief from the initial finding of parentage.

However, in vacating the initial determination of parentage, the juvenile court further held, and the court of appeals agreed, that appellee was not responsible for *any* support payments. We agree that the situation here warrants prospective relief of support payments. On the other hand, we do not believe that appellee should be permitted to avoid any arrearage that presently exists as a result of his own inexcusable conduct. Appellee voluntarily and deliberately disregarded initial parentage proceedings, thereby causing a delay of the finding of nonpaternity. Thus, we affirm, though for different reasons, the judgment of the court of appeals to the extent that it determined that the juvenile court had the authority to vacate the initial determination of parentage. We disagree, however, with the findings of the juvenile court and court of appeals that appellee is not responsible for any support payments.

Accordingly, we affirm the judgment of the court of appeals in part and reverse it in part and remand the cause to the juvenile court for further proceedings not inconsistent with this opinion. On remand, the juvenile court should assess to appellee any arrearage that the court deems proper and that has accumulated up until the court's February 5, 1997 final entry.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

**COOK, J., dissenting.** I must respectfully dissent on two points. First, though I agree with the majority's conclusion that Guthrie may not use Civ.R. 60(B)(2) to vacate his paternity judgment, I interpret the rule differently. Second, I differ with the court's conclusion that R.C. 3111.16 authorizes the relief the court grants.

I

I cannot join the syllabus of the majority as I think its interpretation of Civ.R. 60(B)(2) eliminates certain putative fathers who could qualify for relief.

The reasoning of the opinion is that because courts have accepted genetic testing evidence in paternity actions for years, such evidence cannot now, under any circumstance, constitute newly discovered evidence. But, just because the *technology* is not "newly discovered" does not mean that a particular putative father may not show evidence of circumstances that objectively impeded his ability to secure accurate, timely test results. The term "newly discovered" in the rule refers, of course, to discovery by the *movant*.

In this case, it is undisputed that Guthrie, but for his own neglect, could have presented the genetic test results in a timely manner.

II

Having properly denied Guthrie Civ.R. 60(B) relief, the majority concludes that he can nonetheless resort to R.C. 3111.16 to vacate the judgment. Neither the parties nor the lower courts cited R.C. 3111.16 as a source of relief here. Nevertheless, the majority concludes that this statute provides continuing jurisdiction to vacate paternity judgments. I believe this conclusion is wrong.

R.C. 3111.16 provides, in relevant part: "The court has continuing jurisdiction to modify or revoke a judgment or order issued under sections 3111.01 to 3111.19 of the Revised Code *to provide for future education and support* and a judgment or order issued with respect to matters listed in divisions (C) and (D) of section 3111.13 and division (B) of section 3111.15 of the Revised Code." (Emphasis added.) R.C. 3111.13(C) and (D) deal with aspects of support, custody, and visitation. R.C. 3111.15(B) provides support payment options.

Thus, R.C. 3111.16 allows courts that order support, custody, or visitation as part of a paternity determination, continuing jurisdiction to modify those aspects of the order. It does not provide the court with continuing jurisdiction to vacate the paternity judgment itself. An adjudicated father who seeks to vacate such a

judgment can do so only by complying with the standards and time limits set forth in Civ.R. 60(B) and *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113.

Moreover, an adjudicated father may not use tardy evidence of non-paternity as a factor justifying modification of support under R.C. 3111.16. Such evidence is of no moment once there is a valid and final judgment of paternity; an adjudicated father's legal duty of support continues throughout the child's minority. *Singer v. Dickinson* (1992), 63 Ohio St.3d 408, 414, 588 N.E.2d 806, 811.

The majority here cites *Singer, supra*, as support for its conclusion that final judgments establishing paternity can be challenged later under R.C. 3111.16. *Singer* does not support this position. In that case, we concluded that, based on the plain language of R.C. 3111.13(C) and 3111.16, a court retains jurisdiction over an order allocating a dependency exemption in a paternity action (an aspect of support), not over the judgment of paternity itself. *Singer*, 63 Ohio St.3d at 413, 588 N.E.2d at 810. The language quoted by the majority as support for its position must be put in context to be properly understood. "It has long been recognized in Ohio that a court retains continuing jurisdiction over its orders concerning the *custody, care, and support* of children * * *. * * * A child affected *by such an order* is considered a ward of the court, which may always reconsider and modify its rulings when changed circumstances require it during the child's minority." (Emphasis added.) *Id.* at 413–414, 588 N.E.2d at 810–811.

Though the practical result in this and similar cases seems harsh, this court has previously elevated finality over perfection in paternity actions. In *Strack v. Pelton* (1994), 70 Ohio St.3d 172, 637 N.E.2d 914, we affirmed the denial of Strack's Civ.R. 60(B) motion due to his failure to present genetic evidence within the time allowed by the rule. We upheld the judgment of paternity despite the fact that the genetic evidence proved conclusively that Strack was not the father. We recognized that our decision "declare[d] as static a state of facts that reliable scientific evidence contradict[ed]." *Id.* at 175, 637 N.E.2d at 916. We justified our conclusion by saying, " 'Finality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values.' " *Id.* at 175, 637 N.E.2d at 916, quoting *Knapp v. Knapp* (1986), 24 Ohio St.3d 141, 144–145, 24 OBR 362, 364, 493 N.E.2d 1353, 1356. We further emphasized that "[f]inality is *particularly compelling* in a case involving determinations of parentage." (Emphasis added.) *Id.*

And in *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 512 N.E.2d 956, this court analyzed the application of *res judicata* to paternity judgments. In that case, we found that no provision of R.C. Chapter 3111, expressly or by implication, excluded the application of the doctrine from parentage actions, and that the same public policy supporting its application generally, applied just as forcefully in such cases. *Id.* at 130, 131, 512 N.E.2d at 960, 961. We held, "the policy of this state requires, in sum, that the parent-child relationship be shielded from the unsettling effects of further judicial inquiry, and that relitigation of parentage be barred, as a general rule, in any subsequent actions, including those initiated under R.C. Chapter 3111." *Id.*

This majority decision contradicts *Strack, Gilbraith,* and the important principles of finality guarded by Civ.R. 60(B) and *GTE Automatic.* It is cold comfort that the misconstruction is done in the interest of achieving a "more just" result in this particular case.