While I concede that the decision of the majority accurately reflects how the law will most likely evolve on this issue, I must respectfully dissent because I do not believe that the language of R.C. 3111.09(A)(1), when read in conjunction with the recent opinion expressed in Cuyahoga Support Enforcement Agency v. Guthrie (1999),84 Ohio St.3d 437, requires a trial court to grant a post-judgment motion for genetic testing or conduct a hearing on the issues asserted therein, nor am I comfortable with such an extension of the law other than by the legislature.
While it is clear that the Guthrie court engaged in a broad interpretation of the continuing jurisdictional authority contained in R.C. 3111.16 so as to conclude that trial courts are vested with the power to modify or revoke a previous judgment of paternity, I will not presume that the Court intended the opinion to have any more far reaching effect that that expressly stated therein. Indeed, since in Guthrie, the motion for genetic testing was granted without objection, the Court was not called upon to answer the precise question raised herein. The existing geneticevidence that Denver Guthrie could not possibly be the child's father merely prompted the Court to declare that it was "not prepared to say that the [trial] court erred in vacating the prior finding of paternity." Thus, while I understand the majority view, I am uncomfortable with this extension of Guthrie, which now requires a court to sanction a party's inexcusable delay, perhaps by many years, in ensuring whether a true, natural parent-child relationship exists. I fear the result of this decision will be to flood the trial courts with requests for genetic testing where paternity was long ago determined and perhaps even admitted.
In support of my position, I turn to both the Guthrie opinion and the Ohio Revised Code. First, although Guthrie is considerably broad in its interpretation of the law, the court took obvious pains to include cautionary language in the opinion. For instance, the court states that: "[f]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values. Finality is particularly compelling in a case involvingdeterminations of [parentage], visitation and support of a minorchild." Guthrie at 441, quoting Strack v. Pelton (1994), 70 Ohio St.3d 172,175. Furthermore, in determining that Denver Guthrie was only relieved of prospective support payments, the Court purposely made mention of his "inexcusable conduct" by deliberately failing to attend the initial proceedings and causing a two year delay in the finding of nonpaternity.
Second, I am compelled to point to the language contained in Chapter 3111. Although R.C. 3111.09(A)(1) mandates the court to order genetic testing upon the motion of any party to the action, I find it significant that the term "alleged father" is used throughout this section. This suggests to me that the legislature did not intend for genetic testing to be mandated at any time post-judgment. This is particularly evident to me since later sections abandon this term and refer only to "the father." See R.C. 3111.13 relating to the custody and visitation rights of "the father," and R.C. 3111.15 entitled "Enforcement of father's obligation." Thus, I find that the difference in language used throughout Chapter 3111 more accurately suggests the intention of the General Assembly that testing was to be mandated only upon the institution of parentage proceedings, and prior to a final judgment finding such parentage.
For these reasons, I must respectfully dissent from the majority opinion.