[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
The defendant-appellant, Anthony Hinkston, appeals from the judgment of the trial court granting his Civ.R. 60(B)(4) motion to terminate a child-support order and extinguish any arrearage, after DNA testing had demonstrated a zero-percent probability that he was the child's father. In his sole assignment of error, he argues that the trial court erred by not additionally granting him a refund of the child-support he had previously paid.
Hinkston's relief under Civ.R. 60(B)(4) resulted directly from the Ohio Supreme Court's decision in Cuyahoga Support Enforcement Agency v.Guthrie (1999), 84 Ohio St.3d 437, 705 N.E.2d 318. In Guthrie, the court sanctioned the use of Civ.R. 60(B)(4) as a means to invalidate a finding of paternity based upon subsequent DNA testing, even though such testing was available at the time of the original paternity proceedings. In order to qualify for such relief, however, the court held that the putative father must not have contributed to the erroneous paternity finding by either ignoring the original proceedings, or by voluntarily and deliberately failing to seek genetic testing in a timely manner.
The putative father in Guthrie did not qualify for relief under either Civ.R. 60(B)(2) or Civ.R. 60(B)(4), because he had chosen to ignore the initial paternity proceedings. However, the putative father was entitled to grant relief under R.C. 3111.16, based upon the juvenile court's continuing jurisdiction over all orders concerning the duty of support. Significantly, the court held that the putative father was entitled to prospective relief only, and that he was not entitled to avoid any arrearage (and presumably not entitled to any refund) because of his own conduct in causing a delay in the finding of nonpaternity.
Hinkston seeks to distinguish Guthrie upon the basis that, unlike the putative father in that case, his early efforts at seeking genetic testing were thwarted by a lack of custody and the mother's lack of cooperation. Freeman and the department of human services, however, strongly disagree, pointing out that Hinkston had voluntarily (although perhaps not knowingly) signed the birth certificate, thereby creating a presumption that he was the father, and that he had then failed to appear at a child-support hearing after being properly served. With regard to the latter point, Hinkston continues to maintain that he did not receive proper notice of the hearing; however, this court, in an earlier appeal, determined that he had. Freeman v. Hinkston (Apr. 28, 1998), Hamilton App. No. C-970337, unreported, discretionary appeal not allowed (1998)83 Ohio St.3d 1429, 699 N.E.2d 945.
At oral argument, counsel for Hinkston conceded the lack of precedent for ordering a refund of child support paid prior a belated finding of nonpaternity. Further, counsel agreed that, given the circumstances of the mother in this case, the question of from where, or from whom, such a refund might be sought presents problems that may prove intractable. While we do not rule out such relief in a different case (one, perhaps, in which actionable fraud may be made out against one of the parties), we cannot discern in the instant case any legal or equitable grounds for the lower court to have granted anything more than prospective relief from future support and collection of the unpaid arrearage.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
HILDEBRANDT, P.J., GORMAN and SUNDERMANN, JJ.