OPINION
{¶ 1} Steven Hopkins appeals from a trial court order denying his request to vacate a child support arrearage of about $17,000 owed to the State of Ohio. In support of the appeal, Hopkins presents the following single assignment of error:
 {¶ 2} Did the trial court err when it failed to eliminated [sic] Appellant's arrearage owed to the State of Ohio, despite finding that he is not the father of the child in question, and eliminating any arrearage owed to the custodial parent?
 {¶ 3} After reviewing the record and applicable law, we find the assignment of error without merit. Therefore, the trial court judgment will be affirmed.
 {¶ 4} On September 30, 1986, Brenda Koogler (now Garst) gave birth to a daughter, Holly Koogler. Subsequently, in January, 1987, Steven Hopkins appeared in court and acknowledged paternity of Holly. At that time, the court ordered Hopkins to pay $39.00 per week in child support. On various occasions thereafter, Hopkins filed requests with the court, including a1988 voluntary request for wage withholding, and a 1997 request for court review of a child support hearing officer's administrative findings and recommendations. Child support was also modified in 1996.
 {¶ 5} In August, 2000, Hopkins filed a motion for an order requiring the parties to submit to genetic testing, but the motion was denied for lack of specificity. Subsequently, on October 12, 2000, Hopkins filed another request for genetic testing. This motion alleged that questions about Holly's paternity had arisen as she had matured. The parties then agreed to genetic testing, which showed a zero percent probability that Hopkins was Holly's father. As a result, in January, 2001, Hopkins filed a motion to terminate child support and for reimbursement of support already paid.
 {¶ 6} A magistrate held a hearing on the above issues and decided that vacating the substantial arrearage owed for public support of the child would materially prejudice the State. However, the magistrate did decide to vacate any arrearage owed to Brenda Garst. The magistrate's decision further noted that the parties had agreed that the paternity determination should be vacated and that the current support obligation should be terminated as of October 12, 2000.
 {¶ 7} Hopkins filed objections to the magistrate's decision, but the trial court adopted the decision. This appeal then followed.
 {¶ 8} Before we address the merits of this case, a few points are in order. In the trial court, Hopkins did not specify the basis for his motion to determine genetic testing or for his motion to terminate child support and eliminate the arrearage. In its brief, the State argues that the standards in Civ.R. 60(B)(4) should be applied, even though Hopkins did not specifically rely on that rule in the trial court. The basis for the State's position is that Civ.R. 60(B)(2), which relates to newly discovered evidence, would not apply because genetic testing was available at the time of the original paternity determination in 1987. Therefore, the State believes that the only remaining provision that could apply is Civ.R. 60(B)(4), which allows a judgment to be vacated when "it is no longer equitable that the judgment should have prospective application." Neither the trial court nor the magistrate addressed this issue; instead they both simply indicated that the court has discretion under R.C. 3113.2111(G) to issue an order cancelling an arrearage, if the court grants relief from judgment.
 {¶ 9} Shortly after the motion for genetic testing was filed, R.C. 3113.2111 became effective. Before the decisions of the magistrate and trial court were issued, this statute had been amended and re-codified, in pertinent part, as R.C. 3119.961, R.C. 3119.962, and R.C. 3119.964. Under both R.C. 3113.2111 and R.C. 3119.961, motions for relief from judgment may be brought in paternity cases, notwithstanding the provisions to the contrary in Civ.R. 60(B). Furthermore, under R.C.3113.2111(G) and R.C. 3119.964(B), if courts grant relief from child support orders, they have discretion to issue orders cancelling support arrearages. The legislature also specifically made the ability to obtain relief retroactive for judgments issued before October 27, 2000. See R.C. 3119.967.
 {¶ 10} Before these statutes were enacted, relief from paternity judgments was available in certain instances under Civ.R. 60(B)(2) and Civ.R. 60(B)(4). See Cuyahoga Support Enforcement Agency v. Guthrie,84 Ohio St.3d 437, 442-43, 1999-Ohio-362. In addition, the Ohio Supreme Court held in Guthrie that a juvenile court has the ability under R.C.3111.16 to vacate an initial finding of paternity, due to its continuing jurisdiction over the child. 84 Ohio St.3d at 443.[1]
 {¶ 11} As we mentioned, vacation of the paternity judgment and termination of Hopkins' prospective support obligation are not at issue, as the parties agreed on those matters. The court's decision to cancel any arrearage owed to Brenda Garst is also not before us, since Garst did not file an appeal. However, the issue of the arrearage owed to the State of Ohio has been appealed. Hopkins claims the trial court erred in failing to cancel the support arrearage owed to the State. We review decisions on child support orders for abuse of discretion, i.e., we consider whether the trial court's attitude was unreasonable, arbitrary, or unconscionable. Jackson v. Jackson (2000), 137 Ohio App.3d 782, 799.
 {¶ 12} Hopkins' first argument is that the trial court acted unreasonably in holding him to an "admission" about his knowledge of paternity. Specifically, the court found that Hopkins was aware at the time of the original paternity order that he may not have been the father of the child. In contrast, Hopkins contends that he only admitted being aware that he might not be the father after a heated argument that took place at least six years after the child's birth.
 {¶ 13} After reviewing the testimony, we agree with the trial court's finding. Hopkins admitted during testimony that he was not sure he was Holly's father when he acknowledged paternity. Hopkins also said he suspected then (when paternity was acknowledged) that Garst was having sexual relations with other men during the time Holly was conceived.
 {¶ 14} In his testimony, Hopkins did mention heated arguments that took place when Holly was six or seven years old (which would have been around 1993 or 1994). During these arguments, Garst told Hopkins directly that he was not Holly's father. Assuming the truth of this testimony, it does not cast doubt on the trial court findings. Instead, it simply indicates that Hopkins' earlier suspicions were confirmed. Since the evidence clearly indicates that Hopkins was not certain of paternity when he acknowledged Holly, the trial court acted reasonably in holding Hopkins to this admission.
 {¶ 15} Hopkins' second criticism concerns the trial court's citation to Knapp v. Knapp (1986), 24 Ohio St.3d 141, for the proposition that finality is typically valued over perfection. According to Hopkins, the quest for finality does not absolve courts from making the best decisions they can. We agree with this general concept, but there is no evidence that the trial court failed to properly balance equities. When the State originally initiated the paternity proceeding, Hopkins admitted that he was the father and was the party responsible for the child's support. The State provided public assistance on the child's behalf and is now owed a substantial balance — nearly $17,000. However, the State did not have any idea that the facts were not as it had been led to believe. Accordingly, the State should not be penalized by the parties' failure to reveal relevant information.
 {¶ 16} In this regard, Hopkins argues that the State had the same chance as he did to protect its interests, by requiring a paternity test. Significantly, however, the State had no reason to ask for a paternity test, since both the mother and putative father agreed on parentage.
 {¶ 17} The trial court found that the State would be materially prejudiced if the arrearage were cancelled, because the State is now precluded by R.C. 3111.13(F)(3)(a) from collecting support from Holly's real father. Specifically, this statute prohibits courts from requiring a parent to pay child support prior to the date the court issues an order for support if two conditions are satisfied: 1) the child was over three years of age at the time of the initial filing of an action to determine the existence of the parent and child relationship for that particular parent; and 2) the alleged father had no reason to know of his alleged paternity of the child prior to the filing of the action.
 {¶ 18} Since Holly was over fourteen years of age when genetic testing was done, the first criterion is satisfied. Furthermore, because Hopkins admitted paternity, it is unlikely that the real father knew of his own potential paternity. In any event, if such evidence existed, the trial court was not made aware of it. Therefore, since the evidence did not indicate any prospect of collecting support from the real father, the trial court did not err in finding material prejudice to the State if the arrearage were cancelled.
 {¶ 19} Hopkins' next argument is based on public policy. First, he contends that requiring individuals to question paternity will damage relationships that society should be trying to preserve. From what Hopkins says in his brief, he was apparently trying to preserve a relationship with Holly's mother, and believes that questioning paternity would have led to problems. The paternity complaint indicates that the parties were living at separate addresses at the time of filing, when the child was only a few months old. Furthermore, by the time a voluntary work order was filed in 1994, the mother's name had changed from Koogler to Garst, meaning that she had married another man sometime between 1987 and 1994. As a result, Hopkins' public policy argument does not fit under the facts of this case. We would also note that an important public policy of courts is to seek truth — and truth is the best way to foster healthy relationships.
 {¶ 20} Hopkins additionally points out that the trial court waived the arrearage owed for times the mother was not on public assistance. Allegedly, this creates an inequitable distinction between persons whose children are on public assistance and those whose children are not. Again, we disagree. The purpose of waiving any arrearage owed to Brenda Garst was to prevent her from profiting by her own possibly wrongful actions. Consequently, the court did not impermissibly distinguish between groups.
 {¶ 21} As a final point, Hopkins argues that Garst should have been made to pay the arrearage to the State, since she unfairly deceived the Court and Hopkins for many years. However, the evidence before the court did not indicate that Garst knew Hopkins was not the father of her child at the time the paternity complaint was filed. All the record reveals is that Garst may have been having sexual relations with more than one man, including Hopkins, when Holly was conceived. Garst may not have been sure who the father was, and may have genuinely believed Hopkins was the most likely candidate. She may have also believed at the time that Hopkins was, in fact, the father.
 {¶ 22} By 1994, both parties appear to have been aware of the relevant facts. As we mentioned earlier, Garst told Hopkins around this time that he was not Holly's father. However, Hopkins took no action for six more years. While we do not condone Garst's actions, Hopkins could have obtained genetic testing, even if it had to be at his own expense. In balancing the equities, the trial court did not act unreasonably by requiring Hopkins to pay the arrearage owed to the State.
 {¶ 23} In view of the above discussion, the single assignment of error is without merit. Accordingly, the judgment of the trial court will be affirmed.
FAIN, P.J., and WOLFF, J., concur.
[1] In a sharply worded opinion, the Tenth District Court of Appeals recently held that R.C. 3119.961 violates the separation of powers doctrine by conflicting with Civ.R. 60(B) and the body of case law surrounding the rule. Van Dusen v. Van Dusen, 151 Ohio App.3d 494,2003-Ohio-350, ¶¶ 15-18. In contrast, the Sixth District Court of Appeals has considered R.C. 3119.961 without noting any apparent problem. See Poskarbiewicz v. Poskarbiewicz, Lucas App. No. L-01-1305, 2002-Ohio-3666, ¶¶ 19-20. We need not address this point, for two reasons. First, both sides in the present case consented to vacation of the paternity finding, and that finding has not been appealed to our court. Second, Van Dusen involved a divorce proceeding, not a juvenile court action. As we indicated, the Ohio Supreme Court said in Guthrie
that juvenile courts have continuing jurisdiction over children and may vacate initial findings of paternity under R.C. 3111.16.84 Ohio St.3d at 443.