DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which denied the motion of appellant, Harold J.D., to forgive his child support arrearage.
 {¶ 2} On October 11, 1989, Jennifer H., now known as Jennifer K., filed a parentage action in which she asserted that appellant was the father of her daughter, Cassandra, born April 8, 1987. On November 2, 1989, the Lucas County Child Support Enforcement Agency ("LCCSEA"), then known as the Lucas County Human Services Department, filed an affidavit in which it avowed that it had provided public assistance to Jennifer for the support of her daughter.
 {¶ 3} On November 27, 1989, appellant moved the court for an order requiring himself, Jennifer, and Cassandra to submit to genetic testing. Appellant's motion was granted. Nevertheless, it appears from the record that either the ordered testing was not completed or that the results of genetic testing were never presented to the trial court.
On July 2, 1991, the juvenile court entered an agreed upon judgment naming appellant as the natural father of Cassandra, awarding legal custody of the child to Jennifer, granting appellant the right of reasonable visitation, and ordering appellant to pay child support. The judgment notes that appellant was listed on Cassandra's birth certificate as her father. Over the ensuing years, appellant filed a motion for custody of Cassandra, and the amount of his child support obligation was increased on more than one occasion.
 {¶ 4} In 1994, the LCCSEA filed a show cause motion asserting that appellant was in arrears on his child support obligation and that all or part of the amount of support might be assigned to the enforcement agency. In 1995, the court found that appellant was in arrears on his child support obligation and ordered him to obtain employment. In August 1997, the juvenile court entered a judgment noting that appellant admitted that he was in contempt of court and finding that he owed the agency $5,545.96. As of 2003, appellant had a child support arrearage of over $8,000, with more than $5,000 of this amount owed to LCCSEA. Throughout this period, appellant neither requested genetic testing nor challenged the paternity finding in any other manner.
 {¶ 5} On February 14, 2003, appellant filed a pro se motion asking the trial court to vacate the judgment finding him to be the natural father of Cassandra and requesting "genetic testing." The court granted the request for genetic testing and held the motion to vacate in abeyance until the time that the results of the DNA test results were submitted to the court. The genetic test revealed that there was a zero percent probability that appellant was the father of Cassandra.
 {¶ 6} As the result of the genetic testing, the trial court granted appellant's motion to vacate the July 2, 1991 judgment of parentage and terminated appellant's child support obligation as of February 14, 2003. Nonetheless, the trial court did not cancel appellant's obligation to pay any arrearage on that child support obligation. Therefore, on July 7, 2003, appellant moved the court to "terminate" the arrearage.
 {¶ 7} A hearing was held before a magistrate, who found that a portion of the arrearage was owed to the state, as well as Jennifer, and dismissed appellant's motion. Appellant objected to the magistrate's decision. Upon a consideration of the issue, the trial court found appellant's objection not well-taken and denied his motion. Appellant appeals this judgment and maintains that the following error occurred in the proceedings below:
 {¶ 8} "The trial court erred in failing to terminate the child support arrearages [sic] owed by appellant."
 {¶ 9} Appellant maintains that the juvenile court had the continuing jurisdiction under R.C. 3111.16 and through Civ.R. 60(B), to eradicate his child support arrearage. Appellant cites to Cuyahoga SupportEnforcement Agency v. Guthrie (1999), 84 Ohio St.3d 437, to buttress this argument.
 {¶ 10} In Guthrie, the Cuyahoga Support Enforcement Agency commenced, on June 21, 1994, a parentage action against Denver Guthrie, the putative father of a four-year-old boy who was receiving public assistance. Id. The children services agency requested an order requiring Denver to pay costs associated with the birth of the child, to reimburse the agency for the public assistance provided, and to pay child support. Id.
 {¶ 11} Although he was notified of the proceedings, Denver failed to appear. Id. Upon the testimony of the child's mother, the juvenile court found that Denver was the boy's biological father, ordered him to pay child support, and determined that he owed the children services agency an arrearage in the amount of $960. Id. at 438.
 {¶ 12} Several months later, Denver sent the court a letter in which he requested the court to continue a hearing scheduled by the Cuyahoga Support Enforcement Agency until an attorney was appointed for him. Id. Denver's request was granted. He subsequently appeared at the rescheduled hearing and "asked that genetic testing be performed to determine parentage." Id. This request was also granted. Id. The results obtained through genetic testing established a zero percent probability that Denver was the father of the boy. Id. Based upon this result, the juvenile court "vacated and set aside" the determination that Denver was the child's biological parent and held that he was not responsible for "any" support payments." Id.
 {¶ 13} The children services agency appealed. The Eighth District Court of Appeals affirmed the juvenile court's judgment, holding that the lower court's order vacating the prior paternity decision was authorized by Civ.R. 60(B)(4). Id. In the subsequent appeal of Guthrie on a certified question to the Ohio Supreme Court, that court concluded that the juvenile court lacked the authority, pursuant to either Civ.R. 60(B)(2), (B)(4), or (B)(5), to vacate the paternity finding in the case before it. Id. at 439. Nevertheless, the court then found that the lower court had the authority to vacate a finding of paternity under R.C.3111.16, a statute that provides a juvenile court with, inter alia, continuing jurisdiction over all judgments and orders that concern a "duty of support or involve the welfare of a minor child." Id. at 444;State ex rel. Lloyd, v. Lovelady, 8th Dist. No. 83090, 2004-Ohio-3617, at ¶ 29.
 {¶ 14} After determining that the "change in circumstances" warranted relief from the initial finding of paternity, the Guthrie court turned to the issue of child support. Id. It agreed with the juvenile court in finding that Denver should be relieved of any future child support obligation. Id. However, it disagreed on the question of Denver's ability to avoid the payment of any arrearage. Id. Specifically, the court held that Denver "voluntarily and deliberately disregarded initial parentage proceedings thereby causing a delay of the finding of nonpaternity" and that, as a result, he should not be allowed to avoid any existing arrearage that accumulated due to his "inexcusable" behavior.
 {¶ 15} As in Guthrie, appellant's motion to "terminate" his arrearage does not comply with the standards set forth in Civ.R. 60(B) and GTEAutomatic Elec., Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 1. Furthermore, like the father in Guthrie, appellant declined to pursue genetic testing and agreed that he was Cassandra's biological father. Instead, he waited until the child was a teenager and regarded him as her father before taking the opportunity to seek vacation of the finding of paternity. Thus, despite the fact that R.C. 3111.16 is applicable to this cause, appellant cannot be permitted to avoid his existing arrearage because it is the result "of his own inexcusable conduct." Id. at 444. See, also, Newton v. Dunn, 4th Dist. No. 03CA2701, 2003-Ohio-5523; Garstv. Hopkins, 2d Dist. No. 2002-CA-5, 2003-Ohio-1557.
 {¶ 16} Appellant next urges that his obligation to pay the arrearage should be abolished pursuant to R.C. 3119.61 through R.C. 3119.967.
 {¶ 17} In enacting R.C. 3119.961 and 3119.962, the General Assembly provided a means for relief from a paternity determination. Notwithstanding the provisions of Civ. R. 60(B) to the contrary, R.C.3119.961(A) allows a named biological father to file a motion for relief from the paternity finding. R.C. 3119.962 enumerates the grounds for relief. If the court grants the requested relief under R.C. 3119.962, R.C. 3119.964(B) gives the juvenile court the discretion to cancel any arrearage that is owed. R.C. 3119.967 expressly makes the statute retroactive. Thus, at first blush, it appears that appellant could prevail under the statute.
 {¶ 18} This court, however, found that R.C. 3119.961, 3119.962, and3119.967 are unconstitutional because they violate the separation of powers doctrine. Poskarbiewicz v. Poskarbiewicz, 152 Ohio App.3d 307,2003-Ohio-1626, at ¶ 20. See, also, Van Dusen v. Van Dusen,151 Ohio App.3d 494, 2003-Ohio-350; Hittle v. Palbas, 2d Dist. No, 2003CA52, 2003-Ohio-5843. But, see, State ex rel. Lloyd, v. Lovelady,
2004-Ohio-3617, at ¶ 26 (finding that R.C. 3119.961, et seq. are constitutional). It follows that because statutory ability to cancel any arrearage rests upon findings made pursuant to R.C. 3119.962, a statute found unconstitutional by this court, the trial court lacked the authority to grant appellant's request to "terminate" his child support arrearage. Accordingly, we are constrained to find appellant's sole assignment of error not well-taken.
 {¶ 19} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal. See App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Glasser, J., Concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.