[Cite as *State v. Jackson*, 2011-Ohio-6707.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO. 24486

v.                                     :          T.C. NO.    09CR4340

BRUCE A. JACKSON                       :          (Criminal appeal from
                                                  Common Pleas Court)
    Defendant-Appellant                :

                                       :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___23rd___ day of ___December___, 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 424 Patterson Road, Dayton, Ohio 45419
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Bruce A. Jackson appeals from a judgment of the Montgomery County Court of Common Pleas, which convicted him of two counts of felony non-support of a dependent and sentenced him to community control sanctions. For the following reasons, the trial court's judgment will be affirmed.

I

{¶ 2}  In February 2010, Jackson was indicted for non-support of a dependent between October 1, 2003 and September 30, 2005 (Count One), and between October 1, 2007, and September 30, 2009 (Count Two), in violation of R.C. 2919.21(B).   Jackson was arraigned on February 24, 2010, and the court scheduled a status conference for March 4, 2010, and a scheduling conference for March 11, 2010.

{¶ 3}  On March 4, 2010, Jackson requested a continuance so that he could seek an order from the juvenile court compelling genetic testing to determine whether he is the biological father of the child whose support he allegedly failed to provide.   Jackson argued that, while he was indicted for failing to comply with a support order, the indictment was "legally deficient" if the support order were invalid.   The trial court ordered a two-week continuance.

{¶ 4}  On March 24, 2010, Jackson filed a second motion for a continuance, stating that he lacked funds to hire an attorney to assist him in seeking genetic testing through a juvenile court proceeding.   Jackson also signed a waiver of his speedy trial time.   The court granted the motion, and rescheduled the conference to April 8, 2010.   On April 9, the trial court scheduled a final pre-trial conference on May 27, 2010, and the trial date on June 7, 2010.

{¶ 5}  In late May, Jackson sought another extension due to "genetic testing in juvenile court."   The court continued the pre-trial conference until June 3, 2010.   On June 4, 2010, the trial court issued another entry, which rescheduled the final pre-trial conference to July 29, 2010, and the trial date to August 9, 2010.

**{¶ 6}** On July 21, 2010, Jackson again moved for a continuance, stating: "There is a pending case in Juvenile Court which seeks paternity testing. It is set for hearing in Juvenile Court. The prosecuting attorney agrees to a continuance." The trial court rescheduled the matter for September 23, 2010. In October 2010 (presumably based on the September conference), the final pre-trial conference and trial dates were moved to December 16 and 28, 2010, respectively.

**{¶ 7}** On December 6, 2010, Jackson again filed a motion to continue the trial date. Jackson informed the court that a hearing had been scheduled in juvenile court and the parties were notified, but the mother and child failed to appear. The juvenile court magistrate had declined to order genetic testing, because the court had not ordered the mother and child's appearance and the magistrate concluded that he did not have the authority to order genetic testing when the parties had not been ordered to appear. Jackson stated that the juvenile court hearing had been rescheduled for early January 2011. Although no written entry was filed, the trial court apparently denied the motion for a continuance at the subsequent pre-trial conference, and the court reiterated its ruling at the beginning of Jackson's trial.

**{¶ 8}** A bench trial was held on December 29, 2010, after which the trial court found Jackson guilty of both counts of felony non-support of a dependent. The trial court sentenced Jackson to community control sanctions.

II

**{¶ 9}** In his sole assignment of error, Jackson claims that the trial court abused its discretion when it overruled his motion to continue the December 2010

trial date.

{¶ 10} The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial judge, which will not be reversed absent an abuse of discretion. *State v. Unger* (1981), 67 Ohio St.2d 65, 67. An abuse of discretion requires a finding that the decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

{¶ 11} "In determining whether a trial court abused its discretion when ruling on a motion for continuance, a reviewing court must weigh any potential prejudice to the defendant against the trial court's 'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *State v. Pattson*, Montgomery App. No. 23785, 2010-Ohio-5755, ¶19, quoting *Unger*, 67 Ohio St.2d at 67. The trial court should consider such factors as: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) any other relevant factors, depending on the unique facts of the case. *Unger*, 67 Ohio St.2d at 67-68. However, there are no "mechanical tests" for deciding whether a denial of a continuance violates due process. *State v. Young*, Montgomery App. No. 23438, 2010-Ohio-5157, ¶118.

{¶ 12} Jackson argues that each of the *Unger* factors weighed in favor of granting a continuance. He states that he sought a short one-month delay, that his

motion was his first request to continue a "firm trial date," that a continuance would not have inconvenienced the State's witnesses, that the delay in the genetic testing in the juvenile court proceeding (which was the basis for Jackson's motions for continuances) was not caused by him, that the continuance would not have prejudiced the State, and the case was not complex.

{¶ 13} The State responds that it was irrelevant whether Jackson was the biological father of the child that he failed to support, because he was charged under R.C. 2919.21(B), not R.C. 2919.21(A). The State argues that, when the non-support charge is based on a failure to comply with a court order (R.C. 2919.21(B)), lack of paternity is not a defense to the action. The State further argues that Jackson filed several motions for a continuance prior to the December 6, 2010, motion, and that he did not begin proceedings in the juvenile court until June 2010. For these reasons, the State contends that the trial court did not abuse its discretion in denying Jackson's motion to continue the December 2010 trial date.

{¶ 14} Given the record before us, the trial court did not err in denying Jackson's request to continue the December 2010 trial date. Jackson had repeatedly moved for continuances in his criminal case, which the court had previously granted. Although Jackson informed the court that the hearing on Jackson's request for an order to compel genetic testing had been rescheduled to January 2011, there were no guarantees that the hearing would occur as scheduled, and even if genetic testing were ordered in January 2011, it is unknown when the results of that testing would have been available. The trial court could

have reasonably concluded that its right to control its docket and the public's interest in the prompt and efficient administration of justice weighed most heavily in favor of proceeding to trial in December 2010, as scheduled.

{¶ 15} Moreover, whether Jackson was, in fact, the biological father of the child that he allegedly failed to support had no bearing on the criminal non-support proceeding. R.C. 2919.21(B) provides: "No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support." Nothing in the language of R.C. 2919.21(B) requires the State to prove that a defendant is the biological parent of a child that he or she allegedly failed to support. Indeed, we have held that a violation of former R.C. 2919.21(A)(4), now R.C. 2919.21(B)(4), could be based on the failure to pay alimony, because the statute prohibited the failure to support "*[a]ny person whom, by law or by court order or decree, the offender is legally obligated to support.*" (Emphasis sic.) *State v. Harding* (1992), 81 Ohio App.3d 619, quoting former R.C. 2919.21(A)(4).

{¶ 16} In *Harding*, we agreed with the Tenth District that "R.C. 2919.21(A)(4) does not require proof that defendant is the father of [dependent child] in order to establish that defendant has a duty to support that child; instead, the identity of the child entitled to benefit from the duty to support is furnished by proof, beyond a reasonable doubt, of the existence of a court order or decree." Id., quoting *State v. Nelms* (Oct. 6, 1981), Franklin App. No. 81AP-339. Other appellate districts have similarly held that paternity is not an element of R.C. 2919.21(B). See *State v. Parsley* (1994), 93 Ohio App.3d 788 (noting that former R.C. 2919.21(A)(2)

required the State to prove beyond a reasonable doubt that the accused was the biological parent of the child, while biological parentage was not an element of former R.C. 2919.21(A)(4)); *State v. Brown* (1982), 5 Ohio App.3d 220, 221 ("We find that the Ohio Legislature has removed paternity as an element of the crime of non-support by the passage of R.C. 2919.21(A)(4) [now R.C. 2919.21(B)].").

{¶ 17} And, even assuming that Jackson were found not to be the child's biological father, such a finding would not necessarily result in the elimination of the support arrearage that had accrued. See, e.g., *Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 1999-Ohio-362; *Garst v. Hopkins*, Clark App. No. 2002-CA-50, 2003-Ohio-1557.

{¶ 18} Simply stated, Jackson's efforts to contest his paternity in juvenile court did not require a continuance of the trial on the felony non-support of a dependent charges. Nonetheless, the trial court had granted several continuances to allow Jackson to pursue genetic testing in juvenile court. Given the delays that had already occurred, the court's substantial interest in managing its docket, the public's interest in the prompt administration of justice, and the irrelevance of Jackson's paternity to the criminal proceeding, the trial court did not abuse its discretion in denying Jackson's motion to continue the December 2010 trial date.

{¶ 19} Jackson's sole assignment of error is overruled.

III

{¶ 20} The trial court's judgment will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Andrew T. French
Jay A. Adams
Hon. Mary L. Wiseman