MAPLE HEIGHTS TEACHERS ASSOCIATION ET AL., APPELLEES, *v.* MAPLE HEIGHTS BOARD OF EDUCATION, APPELLANT.

[Cite as Maple Hts. Teachers Assn. *v.* Maple Hts. Bd. of Edn. (1983), 6 Ohio St. 3d 314.]

(No. 82-1068—Decided August 31, 1983.)

316

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A.,* and *Mr. Niki Z. Schwartz,* for appellees.

*Mandanici & Domiano Co., L.P.A.,* and *Mr. Joseph C. Domiano,* for appellant.

HOFFMAN, J. At issue herein is the meaning and application of the "longevity" sentence inserted at the very bottom of the salary schedule set forth in the 1979 master agreement and the association's newsletter's interpretation of that sentence.

The disputed sentence provides generally that longevity increments will be based on total teaching service as defined by the Ohio Revised Code. Its plain language refers to the Ohio Revised Code, not to any specific section therein. We agree with the following:

"It is a fundamental rule of statutory construction that sections and acts in pari materia, that is 'in relation to the same matter, subject or object' should be construed together. * * *" 50 Ohio Jurisprudence 2d 189, Statutes, Section 216.

The applicable sections are R.C. 3317.13 and 3317.14. R.C. 3317.13 reads in pertinent part:

"(A) As used in this section, 'years of service' includes the following:

"(1) All years of teaching service in the same school district * * *;

"(2) All years of teaching service * * * in another public school * * *;

"* * *

"(B) * * * In calculating the minimum salary any teacher shall be paid pursuant to this section, years of service shall include the sum of all years of the teacher's teaching service included in divisions (A)(1), (2), (3), and (4) of this section; except that any school district employing a teacher new to the district shall grant such teacher a total of not more than ten years of service pursuant to divisions (A)(2), (3), and (4) of this section.

"* * *

"Each teacher employed by a board of education in a school district shall be fully credited with placement in the appropriate academic training level column in the salary schedule of the district with years of service properly credited pursuant to this section or section 3317.14 of the Revised Code. * * *"

R.C. 3317.14 reads in pertinent part:

"Any board of education participating in funds distributed under Chapter 3317. of the Revised Code shall annually adopt a teachers' salary schedule with provision for increments based upon training and years of service. *Notwithstanding section 3317.13 of the Revised Code, the board may establish its own service requirements provided no teacher receives less than the amount required to be paid pursuant to section 3317.13 of the Revised Code and provided full credit for a minimum of five years of actual teaching and military experience as defined in division (A) of section 3317.13 of the Revised Code is given to each teacher.*" (Emphasis added.)

Pursuant to R.C. 3317.14, the appellant did establish its own service requirements, which appear in the 1973 Personnel Procedures Handbook as follows:

"Service credit is defined as the number of years of experience in the Maple Heights City Schools as a properly certificated regular employee, *plus*

*the original credit granted for outside experience at the time of employment."* (Emphasis added.)

The original service credit granted to appellee Lambert complies with R.C. 3317.14.

The salary schedule, as set forth in the 1979 master agreement between the board and the association, caused Lambert to receive more than the amount required to be paid under R.C. 3317.13, and the five years' service credit granted to her for actual teaching experience prior to her employment in the Maple Heights school system met the requirements of R.C. 3317.14.

Just as R.C. 3317.14 required the board to grant Lambert a minimum of five years of service credit for her prior outside teaching experience, the companion section, R.C. 3317.13 (B), restricted the board to the maximum grant of ten years' service credit for this experience.

It was not until after the conclusion of negotiations that the association announced its purported official position in its newsletter, The Candle.[1] The intent of the parties as to the meaning of disputed language in a collective bargaining agreement must be considered in light of the facts and circumstances of the negotiations of the agreement. In this case, it is the negotiating teams, as selected by both sides, which are apprised as to the position of the principals and which discuss, negotiate and clarify the issues. The association's post-negotiation statement, simply announced an incorrect position, for the evidence demonstrates that there were no changes as to prior teaching service credits in the 1979 contract. Any doubt caused by the insertion of the disputed language must be resolved against appellees in light of all the circumstances in which it was adopted.

Further, as stated in Corbin on Contracts (1963) 477, Section 543 (A):

"* * * A party will not be permitted to build up his case by self-serving statements."

And, "parol evidence as to what a party thought or meant, or communicated to someone other than the party is admissible only when offered by his opponent. * * *" *Id.* at 281 (1980 Supp.).

We find the article which appears in the newsletter, The Candle, to be parol evidence.

Concluding, this court finds that the meaning of "total teaching service" in this case is the five years of service credit originally granted Lambert in 1958, plus the actual number of years served since then in the Maple Heights school system. Accordingly, the judgment of the court of appeals is reversed and that of the trial court is reinstated.

*Judgment reversed.*

CELEBREZZE, C.J., LOCHER and HOLMES, JJ., concur.

---

[1] This court rejects the official label placed on the article in The Candle by the court of appeals. House organs of this nature are traditionally self-serving, and their ersatz legal interpretations are not binding on parties to a collective bargaining agreement.

W. BROWN, SWEENEY and C. BROWN, JJ., dissent.

HOFFMAN, J., of the Fifth Appellate District, sitting for J. P. CELEBREZZE, J.

WILLIAM B. BROWN, J., dissenting. I agree with the majority that the court of appeals incorrectly relied on the association's purported official position as expressed in its newsletter, The Candle. However, the language of the contract provision is clear and unambiguous and should be enforced as written.

The provision in question reads "* * * total teaching service as *defined* by the Ohio Revised Code." (Emphasis added.) Only one section of the code provides a definition for years of (teaching) service. That section is R.C. 3317.13, the pertinent provisions of which have been quoted in the majority opinion. On the other hand, R.C. 3317.14 is operational rather than definitional. Although years of service is defined in R.C. 3317.13, that section provides that such service may be credited pursuant to R.C. 3317.14. Thus, what R.C. 3317.14 does is to provide boards of education with an alternative means of compensating teachers for total service, so long as certain minimum standards are met. It does not allow a board of education to redefine years of service.

If R.C. 3317.14 did not exist, one would still be able to define years of service under R.C. 3317.13. The reverse is not true. While it is unfortunate to have to be so technical with words, the contract does contain the language, "as defined," and the only section providing definitions in this case is R.C. 3317.13. Therefore, I would affirm the judgment of the court of appeals.

C. BROWN, J., concurs in the foregoing dissenting opinion.

SWEENEY, J., dissenting. The majority concludes that the disputed contractual provision encompasses not only the definitional section, R.C. 3317.13 (A), but also R.C. 3317.14, which permits a board of education to limit credit for teaching in other districts to five years. As appellees note, however, R.C. 3317.14 is not a definitional section. Rather, R.C. 3317.14 makes express reference to R.C. 3317.13 (A) as the applicable definitional section. The disputed provision states that "[l]ongevity increments will be based on total teaching service as defined by the Ohio Revised Code." "Defined" is the key word and the only pertinent definitions are in R.C. 3317.13 (A). If the contract had read "increments will be based on total teaching service pursuant to the Ohio Revised Code," then appellant's argument, which the majority has adopted, that R.C. 3317.13 (A) must be read *in pari materia* with R.C. 3317.14, would have some merit. The language of the contract, however, is by its terms confined to the definitional provision of the Code.

The majority attempts to support its holding by invoking the canons of

contractual construction regarding the intention of the parties. The majority apparently is satisfied that no meeting of the minds occurred with respect to the disputed provision because no discussion took place concerning this provision and the teachers did not explain why they wanted to include it. From this circumstance the board contends that no change in prior practice was intended and that the personnel handbook's discussion of service credits remained in force. Nevertheless, the board did agree to add the "longevity increment * * *" language. If it did so without determining what the language meant and without requiring the teachers to articulate their reasons for the provision, then it would appear that the board agreed to a provision that it did not fully understand. The majority notes in the statement of the case that " 'the board's representatives made no searching inquiries about the union's purpose * * *' " regarding the insertion of the controverted term into the contract. The time to have questioned this provision was when the parties were engaged in negotiating their agreement. If the board had objected to the teacher's interpretation at the bargaining table, then this litigation could have been avoided.

I find the majority's discussion of the article that appeared in The Candle to be irrelevant. The plain language of the contract itself as read through R.C. 3317.13 (A), not the interpretative gloss furnished by the unattributed statement in the teachers' newsletter, dictates the conclusion that appellee Lambert is entitled to a longevity increment under the contract. For this reason, I respectfully dissent.

CLIFFORD F. BROWN, J., dissenting. I concur in the cogent analysis in the dissent of Justice William B. Brown that only one section of the Ohio Revised Code, namely, R.C. 3317.13, provides a definition for years of teaching service. R.C. 3317.14 is not definitional and is therefore not applicable.

This court allows itself to be bogged down in consideration of all the surrounding circumstances which accompanied the signing of the contract in this case. This is apparent from the opinion which states that the intent of the parties must be considered "* * * in light of the facts and circumstances of the negotiations of the agreement."

Therefore the decision of the court of appeals should be affirmed.