[BAUER, ADMX.,] ET AL., APPELLANTS, *v.* GRANGE MUTUAL CASUALTY COMPANY ET AL., APPELLEES.

(No. CA85-09-076 — Decided August 11, 1986.)

*Lindhorst & Dreidame* and *Mark A. MacDonald,* for appellants.

*Gustin & Lawrence Co., L.P.A.,* and *James W. Gustin,* for appellees.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

This is an appeal by plaintiff-appellant, Erika Bauer, individually, and as administratrix of the estate of her husband, Charles Bauer, from a decision of the Court of Common Pleas of Clermont County finding that Charles Bauer's (hereafter, "Bauer's") insurance contract with defendant-appellee, Grange Mutual Insurance Company, was cancelled for non-payment of premiums before Bauer's death.

On August 19, 1981, Bauer was killed by a negligent, uninsured driver. There is no dispute that if the insurance contract between Bauer and appellee was in force on the date of Bauer's death, the named policy beneficiary was entitled to benefits. The dispute *sub judice* centers on whether the policy was in effect on August 19, 1981.

Although the facts are disputed, each side's evidence can be quickly summarized. Prior to his death, Bauer had automobile insurance with appellee which included uninsured motorist coverage. Normally, policy premiums were paid semiannually. However, during the 1981 recession, appellee instituted a program whereby semiannual premiums could be paid in two equal installments. According to the record, the first installment was due at the outset of the semiannual coverage period and the balance (plus a $1.50 service charge) was due sixty days thereafter.

There is no dispute that the first premium installment for the semiannual period beginning May 25, 1981 was paid, and that initially Bauer and appellee were bound by the terms of the policy. However, according to appellee's special payment terms, the balance of the semiannual premium was due July 25, 1981, sixty days from

May 25. It is undisputed that the Bauers did not pay the balance by that date. Appellant testified that she believed the premium balance was due August 25, 1981, some ninety days after May 25.

Based on her belief that the premium balance was not due until August 25, 1981, appellant did not even write the check for it until August 17, 1981, and appellee did not receive it until August 20, 1981, one day after Bauer's death. The record reflects, however, that when appellee did not receive its semiannual premium balance on July 25, it began cancellation procedures, including appropriate notices to Bauer, culminating in a notice of cancellation being mailed to Bauer on August 13, 1981, which indicated the policy was cancelled on August 10, 1981 (some nine days before Bauer's death). Appellant claims she never received any of appellee's notices or mailings.

Appellant concedes that appellee intended to cancel its insurance with the Bauers on August 10, 1981, even though this is less than half (three months) of the semiannual period which began May 25, 1981. For its part, appellee concedes that because of its cancellation of the policy on August 10, 1981, it owed the Bauers a refund of $6.55 in unearned premiums. These unearned premiums were not refunded to appellant until September 8, 1981, well after Bauer's death. Appellant asserts this is the crucial factor in this case based on Ohio statutory law.

These facts were presented to the trial court at a bench trial. At the conclusion of appellant's evidence on the issue of coverage,[1] appellee moved for a directed verdict. The trial court granted the motion finding appellee had cancelled the policy before Bauer

died. Thereafter, a stipulation was entered into the record that Bauer was killed by an uninsured motorist's negligence on August 19, 1981, and that his wrongful death claim would have been worth more than $50,000, the policy's limit for such claims.

Appellant appeals and assigns the following error:

"The trial court erred to the prejudice of plaintiff-appellant by finding that R.C. 3937.33 does not apply to cancellation of an automobile insurance policy for non-payment of premium."

We find the assignment of error has merit and reverse the decision of the trial court finding the insurance contract was cancelled.

A resolution of appellant's assignment of error requires us to examine R.C. 3937.31 through 3937.33. These statutes make up Ohio's law on cancellation of automobile insurance policies. To these sections we now turn.

R.C. 3937.31 provides, *inter alia,* a basic mandatory two-year policy term as well as a number of grounds for whose violation an insurer may cancel its insured's policy in accordance with R.C. 3937.30 through 3937.39 and the policy's terms. Of particular importance to the case *sub judice* is R.C. 3937.31(A)(3). It provides that nonpayment of premiums is grounds for cancellation of an insurance contract.

R.C. 3937.32 provides for the mailing of a notice of cancellation prior to an effective cancelling of an insurance contract. In addition to providing that the notice shall be sent, R.C. 3937.32 commands that the notice must contain certain information. This information includes: (1) the policy number; (2) the date of the notice's writing; (3) the

---

[1] The proceedings herein were bifurcated into (1) the issue of policy cancellation before the death, and (2) coverage as well as damages if the policy was not cancelled before the death occurred.

effective date of the cancellation, which generally shall not be less than thirty days from the date of the notice itself; (4) an explanation of the reason for the cancellation and the information on which it is based, or a statement that upon written request the insurer will provide its reason; and (5) a statement that the insured has certain review rights respecting the accuracy of the underlying information and the action taken.

R.C. 3937.33, procedures for cancellation, describes how one puts all the prior statutory sections together to effectively cancel an insurance contract. A review of this statute reveals it repeats to some extent the requirements set forth in R.C. 3937.32 for an effective cancellation. However, it adds:

"Prior to the effective date of cancellation, the insurer shall tender to the insured any refund premium and other sums which may be due the insured.

"Upon compliance by the insurer with all requirements of this section, such automobile insurance policy is cancelled on the effective date stated in the notice of cancellation * * *. In the event of the insurer's failure to comply with any requirement of this section, such cancellation shall be ineffective and the policy shall continue in force until such time as it is cancelled or otherwise terminated pursuant to law and the terms of the policy."

Appellee argues that "* * * the legislature obviously did not intend to include cancellation for non-payment of premiums as a reason for cancellation within the purview of R.C. 3937.33 for typically when a policy is being terminated for non-payment of premium, there are no funds to return." We disagree with appellee's characterization of the legislative intent expressed in R.C. 3937.33.

The words used by the General Assembly in R.C. 3937.33 are "refund premium." Moreover, the General Assembly has specifically cited R.C. 3937.31 which includes cancellation for nonpayment of premium. That appellee chooses to characterize the $6.55 returned to appellant as "unearned premiums" does not impress us nor does it change the fact that this money is nothing less than a refund of premium.

The facts in this case clearly show an attempt by appellee to cancel its insurance policy with the Bauers on a ground set forth in R.C. 3937.31. They also show that the insured was due a premium refund because the effective date of the cancellation, a date we note appellee chose, preceded the calendar date on which the previously paid premium would otherwise have caused the policy to lapse.

Appellee points out that this is not the "typical" case. We find this argument unpersuasive as well. Perhaps the reason this is not the typical case is because appellee chose to charge Bauer a premium for ninety days of insurance coverage but only provided coverage for sixty before initiating cancellation procedures which would be effective before ninety days passed.

As we view R.C. 3937.33, where no refund is due, no problem of statutory compliance respecting a refund exists. However, where a refund is due, no matter what the reason, the law requires it to take place before an effective cancellation will be permitted. An Ohio court enforces the law as enacted by the General Assembly through statutes by enforcing the plain meaning of those statutes. *Bernardini v. Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 12 O.O. 3d 1, 387 N.E. 2d 1222; *State v. Jenkins* (1984), 15 Ohio St. 3d 164, 212, 15 OBR 311, 352-353, 473 N.E. 2d 264, 306, certiorari denied (1985), 472 U.S. 1032. This is the plain meaning of R.C. 3937.33.

It is undisputed that appellee did not present appellant with a refund of unearned premiums until September 8, 1981, well after Bauer died. Since under R.C. 3937.33 the policy did not effectively terminate until that point, appellant was entitled to coverage under the insurance contract with appellee.

In examining R.C. 3937.32 and comparing subsections (C) and (E) one finds two distinct and potentially contradictory pre-cancellation notice periods are set forth. Subsection (C) provides generally that cancellation shall not occur earlier than *thirty days* from the date of the notice, while subsection (E) provides, in cases of cancellation for nonpayment of premium, that cancellation shall not occur until at least *ten days* from the date of mailing the notice.

Relying on the special ten-day period for cancellation due to premium nonpayment set forth in R.C. 3937.32(E), the trial court concluded that R.C. 3937.33 was inapplicable in the instant premium nonpayment case because the notice period in R.C. 3937.32(E) is different from that in R.C. 3937.33. We disagree.

R.C. 3937.32(E) is no more than a specific statute stating that a different cancellation period than the one set forth in R.C. 3937.32(C), the general notice period statute, applies where the ground for cancellation is nonpayment of premiums. This does not mean R.C. 3937.33 does not apply to an R.C. 3937.32(E) cancellation for nonpayment of premiums.

Statutes and subsections within the same chapter of the Revised Code should be read *in pari materia* with one another and be harmonized with one another whenever possible. *Bobb* v. *Marchant* (1984), 14 Ohio St. 3d 1, 14 OBR 1, 469 N.E. 2d 847; *Maple Hts. Teachers Assn.* v. *Maple Hts. Bd. of Edn.* (1983), 6 Ohio St. 3d 314, 317, 6 OBR 374, 376, 453 N.E. 2d 619, 621. A special statute covering a particular subject matter must be read as an exception to a statute covering the same and other subjects in general terms. *Western & Southern Indemn. Co.* v. *Chicago Title & Trust Co.* (1934), 128 Ohio St. 422, 191 N.E. 462, paragraph three of the syllabus. Based on these two premises, we believe the trial court was in error in concluding that because the thirty-day notice period in R.C. 3937.33 is similar to that in R.C. 3937.32(C), but not R.C. 3937.32(E), then R.C. 3937.33 only applies to R.C. 3937.32(C) cancellations and not R.C. 3937.32(E) cancellations. In our opinion, to so read R.C. 3937.33 is not to apply it *in pari materia* with accompanying subsections so as to fully effectuate the General Assembly's intent to protect the general public.

Accordingly, appellant's sole assignment of error is sustained.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

KOEHLER, P.J., JONES and HENDRICKSON, JJ., CONCUR.