DeCOURCY ET AL. *v.*
PUBLIC LIBRARY OF CINCINNATI AND HAMILTON COUNTY, APPELLANT;
BOARD OF COUNTY COMMISSIONERS;
VILLAGE OF LOCKLAND ET AL.,
APPELLEES; STATE OF OHIO.

(No. C-870256—Decided March 16, 1988.)

*Manley, Burke & Fischer, Robert E. Manley, Timothy A. Fischer* and *Gary E. Powell,* for appellant.

*Kenneth Heuck, Jr.,* for appellee village of Mariemont.

*Edward C. Ahlers,* for appellees city of Springdale, village of Terrace Park, village of Amberly and village of Greenhills.

*Franklin A. Klaine, Jr.,* for appellee city of Wyoming.

*Robert J. Gehring,* for appellee village of Newtown.

*Daniel P. Randolph,* for appellee city of Madeira.

*Richard P. Dusterberg,* for appellee city of Montgomery.

*Daniel J. Breyer* and *Wm. Stewart Mathews,* for appellee village of Evendale.

*F.M. Gleeson II,* for appellee village of Glendale.

*Richard A. Castellini,* city solicitor, and *Nancy H. Simmons,* for appellee city of Cincinnati.

*Vorys, Sater, Seymour & Pease,*

Norton R. Webster, Raymond D. Anderson and Matthew J. Barrett, urging reversal for *amici curiae,* Ohio Library Association and Ohio Library Trustees Association.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

In December 1986, the Treasurer and the Auditor of Hamilton County joined forces to seek a judicial declaration of the rights and obligations attending the distribution of the monies then remaining in the 1986 Hamilton County Library and Local Government Support Fund ("Fund"). Among the parties named in the action, in addition to the defendant-appellant, the Public Library of Cincinnati and Hamilton County, were the various political subdivisions within Hamilton County that had been designated to share in the Fund during 1986. Those political subdivisions were at odds with the public library over an unanticipated shortage in revenue that had given rise to conflicting claims of entitlement to the December balance of the Fund: The Public Library asserted that distribution of the balance should proceed on the basis of the dollars specifically allocated to it pursuant to R.C. 5705.32, while the political subdivisions maintained that they were entitled to participate in the final month's distribution in accordance with the separate percentages established for the distributions made during the first eleven months of the year.

All the disputants moved for summary judgment upon a stipulation of facts, and on April 30, 1987, a judge of the court of common pleas resolved the controversy in favor of the political subdivisions, entering judgment for them as a matter of law for the reasons detailed in a separately filed "Memorandum of Decision." In this appeal, the public library now asserts, in the only assignment of error given to us for review, that it was the party properly entitled to summary judgment in the court below. For the following reasons, we disagree.

The record reflects that in July 1985 Ohio's Tax Commissioner estimated that state income-tax revenues would produce $31,107,895.20 for the Hamilton County Library and Local Government Support Fund in 1986. Some two months later, the Hamilton County Budget Commission conducted a series of public hearings to consider the specific funding needs of the public library in Hamilton County. On the basis of the presentation made by the library's board of trustees, the commission allocated to the public library the sum of $22,242,296, which represented seventy-one percent of the projected resources available from the 1986 Fund; the remaining twenty-nine percent of the estimated Fund was earmarked for distribution to the political subdivisions within Hamilton County.

For the first eleven months of 1986, monies were distributed from the Fund in accordance with the percentages derived from the budget commission's allocation hearings: in each month, seventy-one percent of the balance then on hand went to the public library, and the political subdivisions took shares of the other twenty-nine percent. In December, however, the actual tax revenues received from the state for distribution left the Fund short of the Tax Commissioner's original estimate of what would be available for the entire year. The shortfall made it impossible to reach in dollars the figure set by the budget commission for the annual allocation to the public library, unless the political subdivisions received substantially less than twenty-nine percent of the Fund's final disbursement. Believing that the satisfaction of its allocation took precedence in law over the satisfaction of any others,

the public library claimed entitlement to a larger share of the December balance, and this lawsuit resulted when the political subdivisions insisted on a percentage distribution in line with what had occurred in each of the prior eleven months.

Our review of the trial court's resolution of the controversy in favor of the political subdivisions requires us to interpret the provisions of the Revised Code that govern the allocation and disbursement of monies in library and local government support funds. Two statutes provide the focal point for our analysis: Matters concerning allocation are addressed in R.C. 5705.32, and matters involving disbursement are separately treated in R.C. 5747.48.

R.C. 5705.32 defines the process that the county budget commission must follow in determining the allocation of tax revenues targeted for a library and local government support fund in a given year. When a particular allocation involves entities in addition to the public library, the commission must act in accordance with R.C. 5705.32(D), which reads, in relevant part, as follows:

"The commission shall separately set forth the amounts fixed and determined under divisions (B) and (C) of this section in the *official certificate of estimated resources,*' as provided in section 5705.35 of the Revised Code, and separately certify such amount to *the county auditor who shall be guided thereby in the distribution* of the county library and local government support fund for and during the fiscal year. In determining such amounts, *the commission shall be guided by the estimate certified by the tax commissioner * * ** as to the total amount of revenue to be received in the * * * fund during such fiscal year." (Emphasis added.)

It is clear from the foregoing language that the setting of allocation dollars is based entirely on estimates of the tax revenues to be received from the state, and that the specific monetary amounts adopted by the budget commission are themselves nothing more than estimates designed to serve as guidelines for the actual distribution of monies from the Fund. Nowhere in the allocation statute is there any guarantee, either explicit or implicit, that the actual distribution of the Fund at the end of a given year will turn out to match dollar-for-dollar the specific allocation figures projected by the commission. This is just as true for allocations to public libraries as it is for allocations to political subdivisions. The absence of a guarantee in fixed dollars results, in our judgment, from a recognition of the need for maintaining an objective measure of flexibility in the process to allow for the even-handed reconciliation of actual dollars with projected revenues, particularly in those years when actual revenues fall short of the projected estimates.

This view of how the process is intended to function is only reinforced by a reading of R.C. 5747.48, which makes mandatory a specific method for distribution of the Fund on a monthly basis in these terms:

"On the fifteenth day of each month, the *county treasurer shall distribute the balance* in the county library and local government support fund among the [various entities] for which the county budget commission has fixed an allocation from the fund in that year *in accordance with section 5705.32 of the Revised Code in the same proportions that each such entity's allocation as fixed by the commission is of the total of all such allocations in that year. * * *"* (Emphasis added.)

The import of the distribution statute is unmistakable. Under its terms, the role of the allocation figures set by the budget commission as *guide-*

*lines* for the county treasurer's distribution of actual Fund monies is both emphasized and particularized. In simple terms, the allocations are given limited use as reference points in a formula for establishing the separate ratios or percentages that ultimately govern disbursement of actual monies during a given year. Those ratios or percentages remain constant throughout the year, regardless of any fluctuations in the tax revenues received from the state, as part of a system that plainly requires disbursements in the last month of the year to proceed in the same fashion that disbursements were made in the first month.

In the end, it must be said that our task of giving full effect to R.C. 5705.32 and 5747.48 remains uncomplicated by any ambiguities or inconsistencies. The two statutes are *in pari materia* to the extent that both relate generally to the same subject matter and both share a common purpose to facilitate the use of state tax revenues by public libraries and deserving local governments. See, generally, *Maple Hts. Teachers Assn. v. Maple Hts. Bd. of Edn.* (1983), 6 Ohio St. 3d 314, 317, 6 OBR 374, 376, 453 N.E. 2d 619, 621. There are, however, no conflicts to resolve and no rules of construction to apply. Reading the statutes together and giving plain and ordinary meanings to their terms, we hold that the General Assembly created a system under which allocations determined on the basis of revenue estimates guide the actual distribution of monies by yielding the ratios or percentages that actually govern monthly disbursements from a particular fund.

The operation of the system in the context of the present case is clear. Where, as here, there is a revenue shortfall occurring in the last month of the year, the public library and the political subdivisions for which allocations have been set must continue to share in the balance of the Hamilton County Library and Local Government Support Fund in accordance with the percentages uniformly applied during the other months of the year, with no claim of right on the part of any entity to satisfy the full amount of the dollar allocation originally set for it. Whatever preference the library may be said to enjoy under these circumstances is fully realized by virtue of the fact that its allocation gives it a percentage share of the final month's balance that is significantly larger than that going to the political subdivisions.

In the absence of any genuine issue of material fact on the state of this record, our reading of the two statutes here in question leads inescapably to the conclusion that the political subdivisions were entitled, as a matter of law, to the judgment entered in their favor in the court below. The public library's only assignment of error is, therefore, without merit.

We affirm the judgment of the court of common pleas.

*Judgment affirmed.*

KLUSMEIER, P.J., SHANNON and UTZ, JJ., concur.