DECISION AND JUDGMENT ENTRY
{¶ 1} Duane Dunn ("Dunn") appeals the trial court's decision denying his motion to set aside child support arrearages. Dunn raises two assignments of error, alleging that the trial court erred in failing to eliminate his child support arrearage owed to Patricia Newton ("Mother"), and in failing to eliminate his child support arrearage owed to the State of Ohio. Pursuant to R.C. 3119.964(B), the trial court has the discretion to issue an order canceling a child support arrearage if the court grants relief from a child support order pursuant to R.C.3119.962. Because we find that there is some competent, credible evidence supporting the trial court's refusal to vacate Dunn's child support arrearage, we overrule Dunn's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} On August 25, 1992, Mother gave birth to Adam C. Newton. She was married to Donald Newton ("Newton"), but living with Dunn. Mother and the Ross County Department of Human Services (now known as "Ross County Job and Family Services" or "RCJFS") initiated proceedings to establish Dunn as Adam's father on December 15, 1992. In the Complaint, Mother stated that Dunn was Adam's father. Because Mother was married, her husband was statutorily presumed the father, and his name appeared on the child's birth certificate. Therefore, Mother also named Newton as a party. Mother's complaint clearly states she separated from her husband in October 1990 and that they remained separated, except for an attempt to reconcile in December 1991.
 {¶ 3} On January 29, 1993, Dunn filed an answer and affidavit, pro se, acknowledging that he was Adam's father. Dunn's answer stated he had been with Mother "since approximately Feburary (sic) 1991, prior to the probable conception date of December 9, 1991, and he is satisfied that he is the father of Adam C. Newton." In his affidavit, Dunn acknowledged that he was informed of his right to have an attorney represent him in the parentage action and his right to have genetic testing to insure that Adam was, in fact, his child. He further acknowledged that, by signing the affidavit, he might be giving up his legal rights to a trial and to genetic testing.
 {¶ 4} In March of 1993, Dunn wrote a letter to the court requesting genetic testing because he had reason to believe that he was not Adam's father. Dunn suspected he was not Adam's father because, at the time of the birth, Mother told the hospital personnel that Newton was the child's father. Citing Dunn's acknowledgement of parentage, the court denied his initial request for genetic testing. Dunn later filed a motion requesting leave to amend his answer to deny parentage and request genetic testing. Dunn's motion alleged the statutory presumption that Mother's husband was Adam's father, and the fact that Newton's name appeared on the birth certificate.
 {¶ 5} By a judgment entry dated September 10, 1993, the trial court established the father/child relationship between Dunn and Adam. Because Mother and Dunn lived together, the court did not establish child support at that time. Notably, the entry also granted Dunn "permission to withdraw his motion to amend his answer."
 {¶ 6} Mother and Dunn separated in December 1993, and in September 1995, Mother filed a motion to establish child support. Dunn appeared in the action, represented by counsel, and in January 1996, the court established a child support order. Mother filed several motions to cite Dunn in contempt for failure to pay child support, at least one of which the parties resolved with an "Agreed Entry," modifying Dunn's child support obligation, establishing child support arrears, and staying execution conditioned upon additional monthly payments.
 {¶ 7} Dunn again requested genetic testing by a January 2002 motion. The court denied the request. The record is unclear as to how the matter came before the Fairfield County Court of Common Pleas, Juvenile Division. However, the Fairfield County Department of Job and Family Services conducted genetic testing. The results excluded Dunn as the child's father. Further testing demonstrated a 99.9998% probability that mother's husband, Newton, was Adam's father. Based upon documents Dunn submitted to the trial court, it appears to this court that the Fairfield County Court of Common Pleas, Juvenile Division has decreed that Dunn is not Adam's father, and that Donald Newton is Adam's biological father.[1]
 {¶ 8} Based upon the results of the genetic testing, Dunn filed a motion to terminate his child support obligation and set aside any child support arrearages in August 2002. The trial court granted Dunn's motion as it related to the termination of his child support obligation, and set an evidentiary hearing on his motion to set aside child support arrearages. Mother did not appear at the hearing, although her counsel did. Dunn was the sole witness.
 {¶ 9} In overruling Dunn's motion, the trial court noted Dunn's previous filing of an answer and affidavit admitting paternity, his repeated appearances in the subsequent proceedings while represented by counsel, and his agreement to pay child support. The court concluded that Mother and the RCJFS justifiably relied upon Dunn's admissions and agreements to pay child support.
 {¶ 10} Dunn timely appealed raising two assignments of error: 1) the trial court erred when it failed to eliminate the child support owing to the plaintiff/mother, Patricia Newton, despite finding that appellant is not the father of the child in question; and, 2) the trial court erred when it failed to eliminate appellant's arrearage owed to the State of Ohio despite finding that he is not the father of the child in question.
 {¶ 11} Pursuant to R.C. 3119.961(A), a person may file a motion for relief from a final judgment that determines that the person is the father of a child, or from a child support order under which the person is the obligor. Upon the filing of such a motion, the court shall grant relief if the court: 1) receives genetic test results from a genetic test administered no more than six months prior to the filing of the motion for relief that finds that there is a zero percent probability that the person or male minor is the father of the child; 2) finds the person has not adopted the child; 3) finds the child was not conceived as a result of artificial insemination; and, 4) finds that certain other circumstances do not exist. R.C. 3119.962.[2]
 {¶ 12} Additionally, pursuant to R.C. 3119.964, if a court grants relief from a child support obligation and the obligor owes support arrearages, "the court may issue an order canceling that arrearage." (Emphasis added.) The plain language of the statute does not require the trial court to set aside the child support arrearage, but leaves the decision to set aside such an arrearage to the sound discretion of the trial court. Accordingly, we review the court's decision not to set aside Dunn's child support arrearage to determine whether it constitutes an abuse of discretion. See Purvis v. Purvis, 2002-Ohio-570, Adams App. No. 00CA703, (stating that, "[a]n appellate court uses the abuse of discretion standard when reviewing matters concerning child support."); see, also, Booth v. Booth (1989), 44 Ohio St.3d 142, 144; State ex rel.Scioto Cty. Child Support Enforcement Agency v. Gardner (1996),113 Ohio App.3d 46, 52. The term "abuse of discretion" connotes that the court's attitude is "unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; Booth,44 Ohio St.3d at 144.
 {¶ 13} Here, the trial court found that Dunn acknowledged paternity of the child, that he was present and represented by counsel in the proceedings, and that Dunn submitted an Agreed Entry, wherein he agreed to a child support amount, child support arrearage, and a stay of execution conditioned upon additional monthly payments. Further, the trial court found that Mother and RCJFS justifiably relied upon Dunn's admissions and agreements to pay child support.
 {¶ 14} In his brief, Dunn attempts to portray himself as the innocent victim of a "fraud" perpetrated by Mother. He claims that "[i]t was the Mother who perpetrated a fraud upon [Dunn] and the legal system, and she should not benefit from her actions." However, the record contains no evidence of fraud. Specifically, we note that while Mother's initial complaint to establish parentage alleges that Dunn is the father of the minor child born on August 25, 1992, it also plainly states that she and her husband "have been separated since October 1990, except foran attempt to reconcile in December, 1991." (Emphasis added.) Further, Dunn's own answer acknowledges that the probable date of conception was December 9, 1991. Thus, from the information plainly provided in the record, Dunn knew or should have known from the beginning of this action that Newton might be Adam's father. Despite the information available to him indicating that there was another possible father, Dunn voluntarily acknowledged parentage.
 {¶ 15} Dunn's own testimony demonstrated that he was advised by his attorney that he could request genetic testing, but that he chose not to do so before signing the affidavit acknowledging parentage. Upon cross-examination, Dunn testified that his attorney told him "* * * I he said we could get DNA testing before I signed the papers, you know, and I said no. I just take responsibility, you know."
 {¶ 16} When Dunn did begin to request genetic testing, his requests were not based upon newly discovered information, but rather, relied upon the fact that, at the time of the birth, Mother informed the hospital that her husband was the father of the child, and caused her husband's name to be listed on the child's birth certificate. Mother did not hide this information from Dunn, but clearly stated it in her initial complaint to establish parentage. Further, we note that Dunn chose not to pursue his motion to amend his answer, as the trial court's September 10, 1993 entry granted Dunn permission to withdraw the motion. Based upon the foregoing competent, credible evidence, the trial court could reasonably conclude that there was no fraudulent conduct by Mother, and that Mother justifiably relied upon Dunn's admissions and agreements to pay child support. Accordingly, the trial court did not abuse its discretion in failing to set aside Dunn's child support arrearage owing to Mother. Dunn's first assignment of error is not well taken.
 II. {¶ 17} In his second assignment of error, Dunn alleges that the trial court erred in failing to vacate the portion of his child support arrearage owed to the State of Ohio. Dunn cites no legal authority in support of this proposition. He argues generally, that the decision of the Tenth District Court of Appeals in Van Dusen, supra, holding R.C.3119.96 et seq. unconstitutional, is wrong. Dunn then argues that once a man learns he is not genetically linked to a child, any support arrearages owed to the State of Ohio should be eliminated. Dunn reasons that he is an "innocent man" who thought he was "doing the right thing," and that the State would have provided general assistance to Mother, regardless of who the father was, and regardless of its ability to locate the true father.
 {¶ 18} When RCJFS initiated the paternity proceeding, Dunn admitted that he was the father and was the party responsible for the child's support. The record demonstrates that Dunn waivered from this position during the course of the proceedings, but ultimately requested the court's permission to withdraw his motion to amend his answer. The record reflects that the State, through RCJFS, provided public assistance on the child's behalf. Pursuant to former R.C. 5107.07(A), and current R.C. 5107.20, acceptance of public assistance by Mother constituted an assignment of her right to support from any other person. Thus, RCJFS has a right to collect the child support Dunn owes to Mother, up to the amount of cash assistance provided for the child.
 {¶ 19} As in the case of Garst, RCJFS had no reason to ask for genetic testing at the time the court established parentage because both Mother and putative father agreed on parentage. See, Garst at ¶ 16. Dunn may be correct that RCJFS would have provided benefits to Mother regardless of the identity of Adam's father. However, Dunn's voluntary acknowledgment of parentage effectively prevented RCJFS from identifying the true biological father in a timely manner and pursuing reimbursement from him, because Dunn voluntarily assumed the duty of supporting the child. Dunn does not dispute RCJFS's claim that it is now precluded from collecting back support from the child's biological father pursuant to R.C. 3111.13(F)(3)(a). Because there is some competent, credible evidence in the record demonstrating that RCJFS and the State of Ohio justifiably relied upon Dunn's acknowledgement of parentage we cannot say that the trial court acted arbitrarily, unreasonably, or unconscionably in refusing to vacate Dunn's child support arrearage owed to the State. Accordingly, Dunn's second assignment of error is not well taken.
 {¶ 20} Based upon the foregoing, we find the record contains some competent, credible evidence to support the trial court's conclusion that Dunn remains responsible for his past child support obligation to Mother and the State. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Evans, P.J.: Dissents.
Abele, J.: Concurs in Judgment and Opinion.
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes a finaljudgment entry and the time period for further appeal commences from thedate of filing with the clerk.
[1] The record does not reflect how the matter came before the Fairfield County Court. Nor does it contain a certified copy of the October 2002 Fairfield County Entry. However, the parties do not dispute the results of the genetic testing, or the determination that Dunn is not Adam's biological father.
[2] We note that, in the context of a divorce proceeding, the Tenth District Court of Appeals has recently found R.C. 3119.96 et seq. to be an unconstitutional usurpation of judicial power by the legislature. See, Van Dusen v. Van Dusen (2003), 151 Ohio App.3d 494, ¶ 18. However, we note that, in the context of a juvenile proceeding, the Ohio Supreme Court has previously recognized that a juvenile court may vacate initial findings of paternity under 3111.16, due to its continuing jurisdiction over the child. See, Cuyahoga Support Enforcement Agency v.Guthrie (1999), 84 Ohio St.3d 437, 442-43, 1999-Ohio-362. See, also,Garst v. Hopkins, 2003-Ohio-1557, at ¶ 10. Here, we do not address the constitutionality of the statutory scheme because no party has objected to the vacation of the paternity finding, the termination of ongoing child support, or the constitutionality of the relevant statutes.