OPINION
{¶ 1} This matter arises from a decision of the Belmont County Court of Common Pleas, Juvenile Division, relative to the parentage of a minor child. The child was born May 25, 1994, to Appellee Tammy Sue Mahan. Tammy had lived with Appellant, Scott Vah, for at least two years, including during the time of her daughter's birth. On November 29, 1994, Scott signed an acknowledgment of paternity indicating that he was the father. Thereafter, Tammy and Scott's relationship ended.
 {¶ 2} On February 5, 2004, Scott filed a Motion for Relief from Administrative Order pursuant to R.C. § 3119.962. A paternity test was conducted, and it revealed that there was a zero percent chance that Scott was the minor's biological father.
 {¶ 3} Notwithstanding the genetic test results, the trial court denied Scott's motion for relief after the requisite hearing. The Belmont County magistrate concluded that Scott signed the acknowledgment of paternity with full knowledge that he was not the child's biological father. Scott filed objections to the magistrate's decision, but the trial court agreed with the magistrate and overruled his objections. (August 17, 2004, Journal Entry.) Scott timely appealed to this Court asserting three assignments of error on appeal. He claims that the trial court's decision was against the manifest weight of the evidence and that the court failed to consider granting him relief pursuant to R.C. § 3111.16 and Civ.R. 60(B).
 {¶ 4} Tammy filed a cross-appeal raising one assignment of error. For the following reasons, however, the parties' assignments of error are overruled and the trial court's decision is affirmed.
 {¶ 5} We will address Tammy's sole cross-assignment of error first. She claims:
 {¶ 6} "THE TRIAL COURT ERRED IN REFUSING TO FIND R.C. §3119.961 ET SEQ. UNCONSTITUTIONAL."
 {¶ 7} Tammy argues that the Ohio legislature, by and through R.C. § 3119.961 et seq., encroaches upon the Ohio Supreme Court's right to establish rules governing the procedure in Ohio courts. This argument is based on the fact that R.C. § 3119.961 et seq. essentially provide for a new way for an individual to obtain relief from judgment.
 {¶ 8} At the time this alleged error was raised, the Ohio Supreme Court accepted this issue for review in Lloyd v.Lovelady, 8th Dist. No. 83090, 2004-Ohio-3617, and the Ohio Supreme Court recently issued its opinion finding that R.C. §3119.961 et seq. are constitutional. State ex rel. Lloyd v.Lovelady, 108 Ohio St.3d 86, 2006-Ohio-161.
 {¶ 9} The Court concluded that R.C. § 3119.961 et seq. do not violate the separation of powers between the judicial and legislative branches. Based on the statutory history, it concluded that the General Assembly intended to create a substantive right to prevent an individual from being forced to support a child who is not his own, biologically. Id. at ¶ 14.
 {¶ 10} Based on the foregoing, Tammy's cross-assignment of error lacks merit and is overruled based on State ex rel.Lloyd, supra.
 {¶ 11} Scott's assignments of error address the trial court's decision to deny him relief from judgment. Appellant's third assignment of error concerns the weight of the evidence supporting the trial court's decision and claims:
 {¶ 12} "THE COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE COURT COMMITTED AN ABUSE OF DISCRETION BY NOT GRANTING APPELLANT RELIEF PURUSUANT TO A CONSTITUTIONALLY VALID STATUTE, R.C. 319.961 (sic) ET SEQ."
 {¶ 13} R.C. § 3119.962(A)(1) provides relief from a final judgment designating the father of a child or from a child support order designating a person obligated to pay support if three things apply: (1) there are genetic test results finding that there is zero percent probability that the man is the father of the child; (2) the man has not adopted the child; and (3) the child was not conceived via artificial insemination.
 {¶ 14} However, R.C. § 3119.962(B) states that relief from final judgment shall not be granted if the trial court finds by a preponderance of the evidence the person knew that he was not
the natural father of the child before one of several occurrences.
 {¶ 15} R.C. § 3119.962(B) provides in its entirety:
 {¶ 16} "(B) A court shall not grant relief from a final judgment, court order, or administrative determination or order that determines that a person or male minor is the father of a child or from a child support order under which a person or male minor is the obligor if the court determines, by a preponderance of the evidence, that the person or male minor knew that he was not the natural father of the child before any of the following:
 {¶ 17} "(1) Any act listed in divisions (A)(2)(a) to (d) and (A)(2)(f) of this section occurred.
 {¶ 18} "(2) The person or male minor was presumed to be the natural father of the child under any of the circumstances listed in divisions (A)(1) to (3) of section 3111.03 of the Revised Code.
 {¶ 19} "(3) The person or male minor otherwise admitted or acknowledged himself to be the child's father."
 {¶ 20} The acts listed in R.C. § 3119.962(A)(2)(a) to (d) and (A)(2)(f) provide:
 {¶ 21} "(a) The person or male minor was required to support the child by a child support order.
 {¶ 22} "(b) The person or male minor validly signed the child's birth certificate as an informant as provided in section3705.09 of the Revised Code as that section existed prior to January 1, 1998.
 {¶ 23} "(c) The person or male minor was named in an acknowledgment of paternity of the child that a court entered upon its journal pursuant to former section 2105.18 of the Revised Code.
 {¶ 24} "(d) The person or male minor was named in an acknowledgment of paternity of the child that has become final under section 2151.232, 3111.25, or 3111.821 of the Revised Code or former section 3111.211 or 5101.314 of the Revised Code.
 {¶ 25} "* * *
 {¶ 26} "(f) The person or male minor was presumed to be the natural father of the child under any of the circumstances listed in [R.C. § 3111.03(A)(3) or (A)(5)]."
 {¶ 27} A preponderance of evidence has been defined as, "`evidence which is of greater weight or more convincing than evidence which is offered in opposition to it * * *.'" (Citation omitted.) Matchmaker Internatl., Inc. v. Long (1995),100 Ohio App.3d 406, 654 N.E.2d 161; State v. Stumpf (1987),32 Ohio St.3d 95, 102, 512 N.E.2d 598.
 {¶ 28} The dispute in the instant cause centers on whether Scott knew that he was not the child's natural father before he signed the acknowledgement of paternity. Following a hearing on this issue, the magistrate concluded that Scott was aware that he was not the biological father before he acknowledged paternity. Thus, it denied him relief.
 {¶ 29} The trial court agreed with the magistrate's decision in whole and concluded that based on a preponderance of the evidence, Scott knew he was not the minor's natural father before he signed the November 29, 1994, acknowledgment of paternity; before the June 2002, child support order was issued; and before 1998 when he publicly admitted that he was her father. In short, it denied him the requested relief because R.C. § 3119.962(B) applies.
 {¶ 30} It is undisputed that Appellant executed an acknowledgment of paternity in 1994, which was filed with the Belmont County Department of Child Support Enforcement Agency, and an administrative order for the child's support was entered against Scott. However, the parties disagree about whether Scott knew he was not the minor's natural father before he executed the acknowledgment.
 {¶ 31} The record reflects that Tammy and Scott lived together and were sexually active for several years, but were never married. Tammy left their residence for approximately two weeks in the late summer of 1993. Tammy subsequently returned to Scott and learned that she was pregnant.
 {¶ 32} Scott and Tammy were living together at the time of the child's birth in May of 1994. Scott was present at the hospital for the baby's birth; but he was not identified as the father on the birth certificate, and the baby was not given his last name. On November 29, 1994, Scott signed an acknowledgement of paternity at the Belmont County Department of Jobs and Family Services in order to receive assistance with the birthing costs and healthcare for the baby. (Tr., pp. 8-9, 18, 48.)
 {¶ 33} Tammy and Scott continued to reside together until the child was about one year old. Thereafter, and upon the parties' separation, the child resided with Tammy. Scott and his mother continued to visit the child until she was approximately six years old. (Tr., p. 13.)
 {¶ 34} Tammy testified that Scott knew the child was not his natural daughter from the beginning. Tammy testified that she had sexual intercourse with a man named Ron during her short breakup with Scott in 1993. Ron told Tammy that his condom broke. Tammy did not know Ron's last name at the time. Upon learning of her pregnancy, Tammy says that she immediately told Scott the baby was not his. She explained her relations with Ron and the fact that his condom broke. Tammy and Scott fought at the time, but they later agreed that Scott would raise the baby as his own. (Tr., pp. 109-110.)
 {¶ 35} When Tammy was approximately eight and one half months pregnant, Scott told her that his condom had broken once, also. (Tr., p. 145.) However, Tammy still believed that Ron was the baby's natural father.
 {¶ 36} According to Tammy, Scott was in the room when she filled out the birth certificate. She gave the baby her last name, and did not list the father's name. Later, Tammy listed "Ron," with the last name unknown, as the father on certain Department of Jobs and Family Services documents. She testified that Scott was aware of this fact. (Tr., pp. 111, 133, 151.)
 {¶ 37} Tammy also explained that she warned Scott to think about it before he signed the acknowledgment of paternity. However, he said he did not care because "[h]e wanted to be the father[,]" and thought that he and Tammy would continue to stay together. Scott did not want Ron involved with the baby at all. Tammy also said she allowed Scott to sign the form because she did not want this stranger, Ron, to have visitation with her baby. (Tr., pp. 114-117.)
 {¶ 38} Tammy admitted that she was not one hundred percent certain who the baby's father was until the paternity test. However, she said she never deceived Scott, and she never told him that he was the natural father. (Tr., pp. 142-143.)
 {¶ 39} Scott testified to the contrary. He said that Tammy did not tell him the baby was not his until years after her birth. He learned that his name was not on the birth certificate in 1996 when he was audited, which was after he signed the acknowledgment of paternity in 1994. He stated that he signed the acknowledgment with the belief that he was the child's father. (Tr., pp. 14, 16, 17-18.)
 {¶ 40} Scott claims that Tammy first told him the child was not his daughter during an argument in 1998. However, he still believed after the argument that he was her father. Scott said that he did not learn about Ron's possible paternity until the year 2000 or 2001. Scott also denies ever being aware that Tammy listed Ron as the child's father on certain forms. (Tr., pp. 21-22, 158, 161.)
 {¶ 41} At one point Scott acknowledged that he was aware Tammy was promiscuous while they were a couple. However, he later said that he did not know that she was having sex with other men while they were living together. (Tr., pp. 34, 40.)
 {¶ 42} Scott's mother, Sandy Milivac, also testified. She explained that Tammy told her Scott was not the natural father in 1998. Sandy also referred to the many times that Scott's heart was broken as a result of Tammy's promiscuity. In fact, she said that Scott and Tammy finally broke up because he found her in bed with another man. (Tr., pp. 50, 53, 54.)
 {¶ 43} Scott's wife, Rikki Lynn Vah, also testified. She stated that Tammy first mentioned to her that the child was not Scott's daughter toward the end of 1997. However, Scott told her Tammy was just saying that to start trouble. (Tr., p. 61.)
 {¶ 44} Charles Curtis Hooper, Tammy's ex-stepfather, also testified. He remembered Tammy telling him while she was pregnant that an individual named Ron was the baby's father. Charles also described two conversations that he witnessed between Scott and Tammy. Charles was not certain as to where these conversations occurred, but he clearly remembered Scott saying that he did not want Ron involved with the baby. (Tr., pp. 67-70, 74-75.)
 {¶ 45} On rebuttal, Scott testified that he had never met Charles before the hearing date. (Tr., pp. 159-160.)
 {¶ 46} Notwithstanding Scott's testimony, the trial court concluded that Scott knew he was not the minor child's natural father before he executed the acknowledgment in 1994 and before the child support order was issued against him.
 {¶ 47} The instant matter is comparable to Newton v. Dunn,
4th Dist. No. 03CA2701, 2003-Ohio-5523. In Newton, the baby's mother was married to Newton, but living with a man named Dunn. Id. at ¶ 2. Dunn acknowledged paternity in 1991, but subsequently challenged paternity and sought relief from judgment in 1993. Genetic testing revealed that Newton, the mother's estranged husband, was the baby's natural father. However, the court denied Dunn's relief from judgment request under R.C. § 3119.962 because the record showed that Dunn was fully aware of his girlfriend's marriage. Dunn was also aware of her brief attempt to reconcile her marriage before Dunn acknowledged paternity. Thus, the court concluded that Dunn knew or, "should have known * * * that Newton might be [the child's father]." Id. at ¶ 14. Accordingly, R.C. §3119.962(B) precluded relief from judgment.
 {¶ 48} As in Newton, supra, the facts in the instant matter support the trial court's determination that Appellant knew he was not the baby's natural father before he signed the acknowledgment. Specifically, Tammy told Scott that he was not the baby's father at the time she learned of her pregnancy; Scott was not identified on the baby's birth certificate; and Scott admitted knowing Tammy was unfaithful.
 {¶ 49} Accordingly, the trial court's decision is supported by a preponderance of reliable, probative, and substantial evidence. Based on the foregoing, the trial court's judgment was appropriate since the court properly construed and applied R.C. §3119.962 to the facts in this case. Appellant's third assignment of error is overruled because R.C. § 3119.962(B) precludes relief.
 {¶ 50} It should also be noted that Appellant argues that the trial court's decision essentially allows the baby's biological father to fully escape responsibility. While this may be true, this is not a ground for relief under R.C. § 3119.962.
 {¶ 51} Going back to Appellant's first assignment of error, it asserts:
 {¶ 52} "THE COURT DID NOT ADDRESS THE APPELLANT'S REQUEST THAT THE COURT FIND THAT THE MOVANT IS NOT THE BIOLOGICAL FATHER OF THE MINOR CHILD AND THAT THE COURT ISSUE AN ORDER RELIEVING THE MOVANT FROM THE ADMINISTRATIVE ORDER."
 {¶ 53} Appellant argues that the trial court failed to consider granting him relief pursuant to R.C. § 3111.16. R.C. §3111.16, continuing jurisdiction, provides in pertinent part:
 {¶ 54} "The court has continuing jurisdiction to modify or revoke a judgment or order issued under sections 3111.01 to3111.18 of the Revised Code to provide for future education and support and a judgment or order issued with respect to matters listed in divisions (C) and (D) of section 3111.13 and division (B) of section 3111.15 of the Revised Code * * *."
 {¶ 55} However, Appellant did not raise this statutory section in his motion for relief. Appellant likewise did not raise the trial court's alleged failure to address R.C. § 3111.16
in his objections to the magistrate's decision. Civ.R. 53(E)(3)(b) and (d) govern a magistrate's decision and provide in part that, "[o]bjections shall be specific and state with particularity the grounds of objection. * * * A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
 {¶ 56} Appellant is precluded from raising R.C. § 3111.16 for the first time on appeal. Civ.R. 53(E)(3)(b); Moraine v. StegerMotors, Inc. (1996), 111 Ohio App.3d 265, 268, 675 N.E.2d 1345;Office of Consumers' Counsel v. Public Utilities Comm. (1981),67 Ohio St.2d 153, 159, 423 N.E.2d 820, fn. 5.
 {¶ 57} Notwithstanding his apparent waiver, Appellant directs this Court's attention to Singer v. Dickinson (1992),63 Ohio St.3d 408, 588 N.E.2d 806. The Ohio Supreme Court in Singer
recognized that pursuant to R.C. § 3111.16, juvenile courts have continuing jurisdiction, "over its orders concerning the custody, care, and support of children, even when the court's initial order was based on an agreement by the parents of the child." (Citations omitted.) Id. at 413; see also Cuyahoga SupportEnforcement Agency v. Guthrie (1999), 84 Ohio St.3d 437, 444,705 N.E.2d 318 (finding that R.C. § 3111.16 provides a juvenile court continuing jurisdiction over a prior finding of parentage.) These decisions are not inconsistent with the more specific R.C. § 3119.962, which was not in effect when Singer was decided; it did not become effective until March 22, 2001.
 {¶ 58} Further, statutes and subsections within the same chapter of the Revised Code should be read in pari materia with one another whenever possible. Bobb v. Marchant (1984),14 Ohio St.3d 1, 469 N.E.2d 847; Maple Hts. Teachers Assn. v. Maple Hts.Bd. of Edn. (1983), 6 Ohio St.3d 314, 317, 453 N.E.2d 619, 621. Thus, we must construe these two statutes together. Hughes v.Bur. of Motor Vehicles (1997), 79 Ohio St.3d 305, 308,681 N.E.2d 430, and State v. Leichty (1993), 68 Ohio St.3d 37, 39,623 N.E.2d 48. Based on this premise, the trial court was not in error in failing to address the more general statute, since the more specific, R.C. § 3119.962, was applicable. This is especially true since the more general R.C. § 3111.16 was not even raised.
 {¶ 59} Appellant's first assignment of error lacks merit and is overruled.
 {¶ 60} Appellant's second assignment of error asserts:
 {¶ 61} "THE COURT DID NOT ADDRESS THE APPELLANT'S REQUEST THAT THE COURT FIND THAT THE MOVANT IS NOT THE BIOLOGICAL FATHER OF THE MINOR CHILD AND THAT THE COURT ISSUE AN ORDER RELIEVING THE MOVANT FROM THE ADMINISTRATIVE ORDER."
 {¶ 62} Appellant claims that the trial court should have considered granting him relief pursuant to Civ.R. 60(B), which allows relief from judgment based on mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud. The rule provides:
 {¶ 63} "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.
 {¶ 64} "The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."
 {¶ 65} Appellant argues that a fraud was committed against him based on the failure by the Belmont County Department of Job and Family Services to advise him that an individual named Ron had been previously listed as the child's father on certain department documents. However, Tammy testified that Scott was fully aware of the fact that Ron was listed on department documents and that he was the baby's natural father. Evidently, the trial court believed Tammy and not Scott. Further, Scott fails to cite any authority in support of the department's alleged obligation. Thus, this argument lacks merit.
 {¶ 66} In addition, Scott did not file a Civ.R. 60(B) motion at the trial court level. He likewise failed to address Civ.R. 60(B) in his objections to the magistrate's decision. Further, when the magistrate inquired if Scott was seeking relief pursuant to Civ.R. 60, his trial counsel responded that he was proceeding under R.C. § 3119.962. The following exchange took place at the hearing:
 {¶ 67} "[Appellant's counsel]: Your honor just for the record, this motion is filed pursuant to 3119.961 and the subsections which follow and specifically um, 3119.962, relief from final judgment court order from administrative determination * * *.
 {¶ 68} "[Magistrate:] So in other words you're definitelynot proceeding under Rule 60? Okay. All right, but I thinkthere's some reference to that in [Appellee's] um, memorandum,but that's fine. Um . . .
 {¶ 69} "[Appellant's counsel]: I believe that this statute says in spite of Rule 60 this statute is separate from that." (Emphasis in original.) (Tr., p. 4.)
 {¶ 70} Based on the foregoing exchange and the fact that Scott did not raise this as an objection to the magistrate's decision, Scott is precluded from raising Civ.R. 60 for the first time on appeal. Civ.R. 53(E)(3)(b); Moraine v. Steger Motors,Inc. (1996), 111 Ohio App.3d 265, 268, 675 N.E.2d 1345. Scott's arguments based on the civil rule are barred, and this assignment of error is overruled.
 {¶ 71} In conclusion, Appellant's and Appellee's assignments of error lack merit and are overruled in their entirety. Thus, the trial court's decision is affirmed in full.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.